529 A.2d 546

Allright Auto Parks, Inc., Appellant *v.* Zoning Board of Adjustment of City of Philadelphia, Appellee.

Submitted on briefs April 24, 1987, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Donald W. Kramer,* with him, *Craig E. Ziegler* and *Frances A. McElhill, Montgomery, McCracken, Walker & Rhoads,* for appellant.

*Francine Thornton Boone,* Assistant City Solicitor, for appellee.

Opinion by Judge Craig, July 16, 1987:

Allright Auto Parks, Inc., a zoning applicant, has appealed from an order of the Court of Common Pleas of Philadelphia County which affirmed a decision of the Philadelphia Zoning Board of Adjustment refusing permission to erect an eight-foot kiosk on the north side of Chestnut Street. The board and the court both concluded that a thirty-five-foot building *minimum* height requirement in the Philadelphia zoning ordinance applied to the north side of Chestnut Street so as to prohibit the proposed eight-foot structure.

On the basis of an undisputed set of facts, the only question presented is purely one of law—whether, under the zoning ordinance terms, the minimum height requirement is applicable only to the south side of Chestnut Street and therefore does not regulate structures proposed for the north side of that artery where the kiosk site is proposed.

### *Facts and Ordinance Provisions*

Subsection 14-1607(6) of the Philadelphia Code reads as follows:

§14-1607. Special Controls for the Center City Commercial Area

. . . .

(6) Bulk and Height Controls. No building shall be erected which is within an area two hundred fifty (250) feet of the south side of Chestnut Street between Front Street and a point one hundred thirty (130) feet east of Broad Street . . . unless there is compliance with the following height and bulk controls:

   (a) The main cornice line abutting the south side of Chestnut Street . . . shall not ex-

ceed fifty (50) feet in height above the sidewalk level; provided, that no portion of any building within two hundred fifty (250) feet south of the southerly properly [sic] line of Chestnut Street . . . shall exceed this fifty (50) feet height limitation unless the portion or portions above this fifty (50) feet height limitation recede from the plane of the cornice line a distance equal to or greater than the distance it extends above the fifty (50) feet height limit; provided further, that in no case shall any portion or portions of a building exceed three hundred (300) feet in height.

(b) The main cornice line on any building erected on land abutting Chestnut Street . . . shall not be less than thirty-five (35) feet above the sidewalk level.

The proposed Chestnut Street site of the kiosk is near the intersection of Eighth Street and unquestionably is therefore within the ordinance's named east-west (Front Street-Broad Street) limits. Nor is there any dispute that, for the purposes of the ordinance, a kiosk is a "building" and that the phrase "cornice line" in the ordinance refers to the high point of a building for height limit purposes.

Furthermore, although the passage referring to "an area two hundred fifty (250) feet south of the south side of Chestnut Street," if taken literally, describes only a one-dimensional line rather than a two-dimensional area, the parties do not disagree with reading that passage as if it described "an area *extending* two hundred fifty (250) feet south *from* the south side of Chestnut Street. . . ."

## Literal Terms of the Ordinance

Of course, the difficulty arises from the point that the potentially determinative minimum height provision

in paragraph (6)(b) consists of a single sentence stating that the high point of "any building erected on land abutting Chestnut Street" shall not be less than thirty-five feet above the sidewalk level.

The literal import of the entire subsection (6) is clear. Subsection (6), as it relates to Chestnut Street, confines itself to describing only an area *south* of Chestnut Street, and states that no building shall be erected in that area "unless there is compliance with the *following* height and bulk controls:" (emphasis added). The "following height and bulk controls" referred to, after the colon, are unavoidably those restrictions set forth in subparagraphs (a) and (b), the latter being the subparagraph which contains the minimum height restriction.

Accordingly, subsection (6) creates a subdistrict, located only south of Chestnut Street, and subparagraph (b) is one of the controls operative within that subdistrict, that is, the minimum height specification is one of the "following" controls which subsection (6) applies to the subdistrict area described as being *south* of Chestnut Street.

Although subparagraph (b) expressly deals with "any building erected on land abutting Chestnut Street," that passage does not stand alone but, in its subordinate role in the ordinance, clearly refers only to any building erected on land abutting Chestnut Street within the subdistrict south of it.

### Legislative Findings in the Ordinance

In section 14-1607(1) of the Code there are legislative findings by City Council which explain the fifty-foot height *maximum* stated in subparagraph (a) with respect to buildings abutting the south side of Chestnut Street (and also Walnut Street). Those findings read as follows:

 (d) The pedestrian ambiance of Chestnut Street and Walnut Street would be enhanced by

insuring the continued penetration of sunlight and air to the sidewalk areas of these streets *by restricting building heights on the south side* of these streets in a manner that ensures this.

(e) A uniform scale of development would enhance the aesthetic character of Chestnut Street and Walnut Street by maintaining a cornice line or *height line of a pedestrian scale* along said streets.

(f) Therefore, special land use controls are needed to protect the historic, aesthetic, and economic viability of this area. These controls should prohibit certain uses, establish bulk and height controls along *the south side of Chestnut Street* and Walnut Street, and establish facade and sign controls for the area. (Emphasis added.)

Quite clearly, subparagraphs (d) and (e) of the above findings explain and relate only to the *maximum* height provision. Note that subparagraph (d) refers to an intention to ensure the penetration of sunlight, undoubtedly from the south, by "restricting building heights on the south side" of the two streets. Although subparagraph (e) refers to a "uniform scale of development," it does so only with respect to "maintaining a . . . height line of a pedestrian scale" that is, a relatively low height line—all of which relates to the maximum height requirements.

Finally, subparagraph (f) of the above findings expresses the focus of the ordinance provisions which follow by declaring that special land use controls are needed and that

these controls should prohibit certain uses, establish bulk height controls along the south side of Chestnut Street. . . .

Quite clearly, there is nothing in the legislative findings within the ordinance itself to cause us to ignore the clear structure of subsection (6) of section 14-1607, the

subsection which describes a subdistrict exclusively on the south side of Chestnut Street and then expresses the minimum height requirement only within that framework.

*Administrative Recommendation to City Council*

The city's brief in this case also quotes a portion of testimony presented to City Council at its legislative hearing on section 14-1607. Significantly, the city's brief does not characterize this material as a finding by the council, but only as a planning recommendation presented to City Council, apparently by the Planning Commission. The quoted recommendation reads as follows:

> We are also recommending that a minimum height of 35 feet be applicable. We do not want to encourage one-story commercial development. We feel that that offers too much opportunity for people who want to get in and get out quickly, make a quick buck and not provide adequate investment in the area. The shops at 17th & Chestnut I think are a grade above that, but nonetheless we have seen instances where with one story development, you tend to get a much lower level of investment, which tends to detract from the other high quality shops existing on the street.

However, an administrative recommendation *to* City Council is a matter quite distinct from a legislative declaration by the City Council itself. The development goal expressed in the recommendation—avoiding the blighting influence of low, stunted one-story development—obviously is a goal logically implemented by applying the minimum height requirement to both sides of the street in question. However, the fact that the Planning Commission may have had such a goal in mind

does not confer upon the courts any power to rewrite the ordinance as actually enacted by City Council, nor any power to reorganize the structure of the ordinance provisions or add words to them, in order to incorporate the recommended ideas.

Although the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention" of the legislative body, 1 Pa. C. S. §1921(a), there is no judicial authority to rewrite laws for the purpose of improving them or to restructure them in accordance with what might have been the hopes of nonlegislative advocates. The important safeguard against judicial legislation is our statutory interpretation principle that:

> When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa. C. S. §1921(b).

Although the policy of Philadelphia Code subsection 14-1601(6) may be puzzling, its structure and words are not puzzling, and they are certainly not ambiguous. Even though subparagraph (b) speaks only of land "abutting Chestnut Street," it does so as a "following height and bulk control" applicable to the subdistrict lying only south of Chestnut Street.

Possibly the trial judge in this case conscientiously felt a compulsion to overlook the actual structure of the ordinance's elements in order to achieve a sensible result not literally conveyed by its existing words—namely, the idea of having the minimum height requirement apply to both sides of the street, rather than just to the southerly area which council blocked out for the purpose of height restrictions which would permit the penetration of the sun shining from the south.

However, if the legislative body, even through inadvertence, adopts language which falls short of expressing

the best of purposes, then the power and the duty to repair the remedy remains with the legislative body. It does not go to the courts by default.

Although the city's brief charges that Allright's position rests upon viewing section 14-1607(6) in a narrow focus, the City itself seeks to confine attention even more narrowly, namely to subparagraph (b) alone. The difficulty of the city's position emerges clearly when that subparagraph is read within its entire context. A particular section must be read as an integral part of the whole, and not as a separate portion with an independent meaning. *Olson v. Kucenic,* 389 Pa. 506, 509-10, 133 A.2d 596, 598 (1957); *Crary Home v. DeFrees,* 16 Pa. Commonwealth Ct. 181, 329 A.2d 874 (1974).

## *Ordinance Amendment Proposal Subsequent to the Time Governing This Case*

According to the record, Philadelphia City Council has undertaken consideration of an amendment, Bill No. 986, which would reorganize and rewrite subsection (6) by means of a new subsection, (7), which would express clearly those concepts which the City seeks to have the courts write into the ordinance in this case.

Although the city questions the propriety of Allright's reference to this proposed amendment, citing it does not introduce any new issue not raised below. Referring to the amendment constitutes merely a new argument as to the ordinance interpretation question, not a new issue. The amendment, introduced on June 12, 1986, came more than a year after the March 8, 1985 application of Allright. It would delete all of section 14-1607(6) as it reads in this case, and instead, have it read as follows:

(6) **Prohibited buildings.** Upon any land abutting Chestnut street or Walnut street between Front street and Eighteenth street and Broad

street between South Penn Square and Pine street, the following buildings shall be prohibited.

(d)   Kiosks

. . . .

(7)   **Bulk and Height Controls.**

(a)   The main cornice line on any building erected on land abutting Chestnut street . . . shall not be less than thirty-five (35) feet above the sidewalk level.

(b)   No building shall be erected which is within an area two hundred fifty (250) feet south of the south side of Chestnut street between Front street and a point one hundred thirty (130) feet east of Broad street . . . unless there is compliance with the following height and bulk controls:

(.1)   The main cornice line abutting the south side of Chestnut street . . . shall not exceed fifty (50) feet in height above the sidewalk level; provided, that no portion of any building within two hundred fifty (250) feet south of the southerly property line of Chestnut street shall exceed this fifty (50) feet height limitation unless the portion or portions above this fifty (50) feet height limitation recede from the plane of the cornice line a distance equal to or greater than the distance it extends above the fifty (50) feet height limit; provided further, that in no case shall any portion or portions of a building exceed three hundred (300) feet in height.

Of course, the foregoing proposed amendment cannot provide any meaningful indication as to the original intention of the City Council in adopting the original form of subsection 14-1607(6). However, the proposed bill is a good illustration of how to express the effect which the city's brief seeks to read into the present language. Be-

fore limiting itself to a subdistrict located only south of Chestnut Street, the proposed amendment begins subsection (6) free of any such limitation and flatly and clearly would prohibit "Kiosks" on "any land abutting Chestnut Street," a description which embraces both sides of the street because not limited by any preceding words at all. Then, in the new subsection (7), a new provision, subparagraph (a), restates the thirty-five foot minimum height requirement as to "any building erected on land abutting Chestnut Street," unlimited by any preceding subdistrict description.

Only thereafter, in subparagraph (b), does the amendment undertake to narrow the scope of the requirements by describing a subdistrict lying south of Chestnut Street, to which only the maximum height requirements are thereafter applied.

## Conclusion

If the ordinance had been written to govern the present application like the proposed amendment, it would have barred the eight-foot structure. Because it was not written in that manner, administrative rewriting by the city planners, adjudicative rewriting by the Board of Adjustment, or judicial rewriting by the court—however well intended—are not legally warranted.

As the ordinance language stood at the time of the application here, it applied no minimum height limit to the north side of the street in question. Therefore, the decision must be reversed.

### ORDER

Now, July 16, 1987, the order of the Court of Common Pleas of Philadelphia County, dated November 20, 1986, is reversed.