James C. PLATTS and Deborah Platts, husband and wife, Appellants,

v.

ZONING HEARING BOARD OF THE BOROUGH OF BRADFORD WOODS and Borough of Bradford Woods.

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 1994.

Decided Jan. 12, 1995.

**150** ■

Richard W. Kelly, Jr., for appellants.

William R. Sittig, Jr., and John H. Auld, II, for appellees.

Before McGINLEY and PELLEGRINI, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

James C. Platts and Deborah Platts (collectively, Landowners) appeal from an order of the Court of Common Pleas of Allegheny County which affirmed the decision of the Zoning Hearing Board (Board) of the Borough of Bradford Woods (Borough) that held that Landowners' use of their residential property for two commercial enterprises was in violation of the Borough's zoning ordinance. We affirm.

Landowners reside in a spacious, custom-built home located in an R–1, single family residential zoning district in the Borough. Mr. Platts is the president and owner of Pinnacle Building Company, which has its sole office at the residence. The company is a multi-million dollar construction firm that builds commercial buildings and luxury homes. Mrs. Platts is the owner and president of Pinnacle Development Group which also maintains its sole office at the residence. Mrs. Platts' company deals with real estate development and provides marketing, decorating and consulting services exclusively for and with her husband's business and its customers. Each company employs one assistant at the property.[1] Mr. Platts' company also employs numerous field employees and hires many subcontractors.

The Borough's zoning officer cited Landowners for violation of the Borough's zoning ordinance. Landowners filed an appeal from the enforcement notice and, after hearings, the Board determined that commercial businesses were being operated at Landowners' residence, a use prohibited in the R–1 zoning district. Landowners appealed to the trial court which, without taking additional evidence, affirmed the Board's decision. Landowners now appeal to this Court.[2]

The following issues are raised by Landowners: 1) whether the two businesses conducted by the Landowners comply with the ordinance provisions that allow home occupations; 2) whether the Landowners comply with the ordinance restriction for home occupations; and 3) whether the home occupation restrictions can be applied to each property owner separately, thus, allowing more than one home occupation to be conducted in the same residence.

Various portions of the Borough's zoning ordinance are pertinent to the issues raised here. Table 201 sets out the various zoning districts and lists the permitted uses in each district. In the R–1 district, the permitted uses include one-family dwellings, parks, schools, churches and accessory uses. Accessory use is defined in Section 601.1 as "[a] use customarily incidental and subordinate to the principal use and located on the same lot as the principal use, but not a dwelling unit." Section 302.2 defines home occupation and includes the conditions under which a home

---

1. There is some confusion in the record as to whether this is the case or that both assistants are employed by Mr. Platts' company.

2. Our scope of review of a decision of a zoning hearing board where a trial court takes no addi- tional evidence is limited to a determination of whether the zoning hearing board abused its discretion or committed an error of law. *Valley View Civic Assoc. v. Zoning Hearing Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

occupation qualifies as a permitted accessory use. Section 302.2 states:

302.2 HOME OCCUPATIONS: The pursuit of vocational or avocational interests by a resident shall be deemed an accessory use to a dwelling, provided:

(a) Such activity is clearly subordinate to the dwelling, does not occupy more than twenty-five percent of the floor area of one floor, does not entail internal or external alterations or construction features not customary in dwellings, and there be no external evidence of any non-residential activity.

(b) In connections with which there is no display or sign other than a name plate, no mechanical equipment used other than normal domestic or household equipment, no facilities which are dangerous or incompatible with the residential environment, and no selling of a commodity or nonprofessional services on the premises.

(c) In connection with a home office, not more than one assistant is employed and no colleagues or associates use such office.

(d) One additional off-street parking space shall be provided for each two hundred (200) square feet of floor area devoted to such activity.

(e) No detrimental emission of smoke, fumes, odors, dust, noise, vibration, flaring lights, visual blight or pollution of any kind.

(f) Vehicles with business identification signs shall be parked in enclosed spaces or shall be parked so as to be screened from public thoroughfares and neighboring property. The storage and parking of trucks, or construction equipment shall not be permitted as a home occupation.

Initially, Landowners argue that because the pursuit of a vocational interest "shall be deemed an accessory use," the language of the definition of an accessory use, "a use customarily incidental and subordinate to the principal use," need not be addressed. Landowners contend that a home occupation expands the definition of accessory use and; therefore, in addition to the accessory uses

generally contemplated in a definition of an accessory use, a resident may also pursue his or her vocational interests provided they meet the objective requirements set forth in Section 302.2. Simply stated, Landowners contend that their use need only comport with the standards for home occupations and need not meet the requirements that the use be customarily incidental and subordinate to the principal use.

In response, the Board argues that both the accessory use definition and the requirements for a home occupation must be met. Although the Board cites numerous cases to bolster this argument, Landowners contend that these cases all construe ordinance provisions that specifically use the terms "customarily incidental and subordinate" in describing a home occupation. Here Section 302.2, the home occupation section, does not; it states that a "vocational interest shall be deemed an accessory use."[3]

The term "deemed" is not defined in the ordinance; therefore, it must be given its plain and ordinary meaning. *Tobin v. Radnor Township Board of Commissioners*, 142 Pa.Commonwealth Ct. 567, 597 A.2d 1258 (1991). In Black's Law Dictionary 374 (5th ed. 1979), "deem" is defined as follows: "To hold; consider; adjudge; believe; condemn; determine; treat as if; construe." Thus, as applied here to the home occupation section of the ordinance, a vocational interest is held, considered, adjudged, etc., to be an accessory use. No weighing of the factors to determine whether the vocation here fits the accessory use definition, of customarily incidental and subordinate to the main use, is contemplated by the employment of the word "deemed."

However, despite Landowners argument that the accessory use definition is to be disregarded, based on the use of the word "deemed," we are also cognizant of other principles of statutory construction that must be followed in construing a local ordinance.

Of primary concern in interpreting a zoning ordinance is the legislative intent of the governing body which enacted the ordinance. See 1 Pa.C.S. § 1921(a); *Baker*

---

**3.** We note that Section 302.2(a) does include the term "subordinate," indicating that the activity at issue be subordinate to the dwelling. *See* full text of Section 302.2(a) above.

*v. Commonwealth,* 135 Pa.Commonwealth Ct. 597, 605 n. 1, 581 A.2d 1019, 1023 n. 1 (1990). The letter of the ordinance is not to be disregarded in the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *Cope v. Zoning Hearing Board,* 134 Pa.Commonwealth Ct. 236, 240, 578 A.2d 1002, 1004 (1990). A particular section of a zoning or subdivision code must 'be read as an integral part of the whole and not as a separate portion with an independent meaning.' 1 Pa.C.S. § 1921(a); *Allright Auto Parts, Inc. v. Zoning Board of Adjustment,* 107 Pa.Commonwealth Ct. 448, 455, 529 A.2d 546, 549–50 (1987).

*Tobin,* 142 Pa.Commonwealth Ct. at 579, 597 A.2d at 1264.

Following the law as espoused in *Tobin,* we must examine the purpose and intent of the ordinance, and consider whether the accessory use definition and home occupation sections are to be construed together in light of the stated purpose as set forth in Section 501 of the ordinance.

The general purpose of the ordinance is to "provide a pleasant, attractive, health[y], safe and convenient environment for living, education, and recreation." Section 105.1. A more specific purpose expressed in Section 105.3(a) seeks to increase property values and the economic base of the community through "[t]he concentration of non-residential uses in areas where streets and utilities can provide the necessary services and where conflicts with other uses can be minimized through site design and transitional provisions."

■■■ "The intent of the governing body has been called the 'polestar' guiding our construction of ambiguous ordinances." *Tobin,* 142 Pa.Commonwealth Ct. at 584, 597 A.2d at 1267. With two divergent interpretations of the ordinance, there is no question that an ambiguity exists. Thus, with reference to the ordinance's purpose and the proviso that separate sections of the ordinance must be read together, we hold that the ordinance's drafters meant for the two separate portions of the ordinance to be construed together. A vocational interest shall be deemed an accessory use *which is* a use customarily incidental and subordinate to the principal use.

Having determined that Landowners' use must be examined under the accessory use definition, we now turn to the question whether Landowners' two businesses are customarily incidental and subordinate to the principal use.

In *Page v. Zoning Hearing Board of Walker Township,* 80 Pa.Commonwealth Ct. 589, 471 A.2d 1348 (1984), the court was faced with an issue concerning whether a resident should be granted permission to repair and inspect motor vehicles as a home occupation in a detached garage on his property in a residential zoning district. The home occupation provision in the ordinance included the usual terminology of "customarily conducted" and "incidental and secondary". The court explained the basis for its decision to reinstate the zoning board's denial of the vehicle repair business as a home occupation as follows:

With respect to home occupations, which most zoning ordinances similarly define as activities 'customarily' associated with dwellings, our Pennsylvania decisions have never explicitly indicated whether zoning hearing boards and courts may simply take notice of general experience as to what business occupations are customary in relation to dwellings, or whether there can be a factual investigation as to what may be customary within a particular community or its region. The appellate opinions on that issue appear to reflect the first approach, taking notice of general experience and understanding. See *Draving v. Lower Southampton Township Zoning Hearing Board,* 40 Pa.Commonwealth Ct. 243, 397 A.2d 54 (1979) (substantial ceramics operation not customary); *Good v. Zoning Hearing Board of Haverford Township,* 35 Pa.Commonwealth Ct. 155, 384 A.2d 1374 (1978) (real estate office not customarily incidental to residence); *Perez v. Borough of Kennett Square,* 18 Pa.Commonwealth Ct. 425, 336 A.2d 437 (1975) (auto repair business in basement of residence not customary); *Szmigiel v. Zoning Board of Adjustment,* 6 Pa.Commonwealth Ct. 632, 298 A.2d 629 (1972) (printing business not a

---

home occupation); *Boreth v. Philadelphia Zoning Board of Adjustment,* 396 Pa. 82, 151 A.2d 474 (1959) (beauty shop in basement not customary); *Gold v. Zoning Board of Adjustment,* 393 Pa. 401, 143 A.2d 59 (1958) (barber shop not customary in a residence).

*Page,* 80 Pa.Commonwealth Ct. at 592–93, 471 A.2d at 1349–50.

 Most of the cases cited in the *Page* opinion are the ones cited by the Board to illustrate types of businesses that are not generally considered to be home occupations; nor did the Board find that the two businesses at issue here are the type generally found to be home occupations. Moreover, the record contains no evidence that the construction business or the real estate development and consulting business run by Landowners are customarily associated with residences in the Borough or generally. *See Page.* Without a factual or legal basis to establish that these businesses fit within the category of customary endeavors carried on within a residence, we must conclude that the Board's and the trial court's conclusions are correct.

Based on the reasoning set forth above, we need not reach the other two issues raised by Landowners. However, we note that the result reached here is reinforced by Landowners' failure to meet a number of the conditions enumerated under the home occupation section of the ordinance. Specifically, the Board in its decision held that the Landowners' use violated provisions of Section 302.2 of the ordinance. Some of these violations include "a separate entrance for the commercial activities which is an external construction fixture not customary in dwellings," signs other than a name plate, numerous commercial vehicles arriving and departing on a daily basis from the premises and the presence of mechanical equipment (commercial photocopier and blueprint machine) not normally considered household equipment. (Board's decision, pp. 10–11.) The record shows that substantial evidence exists in the record, much of which was presented by Landowners themselves, that forms the basis for the Board's findings. Furthermore, the violations listed above deal with a lack of compliance by both businesses. Therefore, whether the businesses are examined together or separately is of no moment.

As stated above, no basis exists upon which we could conclude that the trial court incorrectly ordered that the Board's decision be affirmed.

Accordingly, we affirm the trial court's decision in this matter.

### ORDER

NOW, January 12, 1995, the order of the Court of Common Pleas of Allegheny County, dated April 19, 1994, at No. S.A. 1947–93, is affirmed.