IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Joan and Douglass : 
Van Tiggelen from the Decision : 
Dated April 22, 2015, of the Jefferson : 
Township Zoning Hearing Board :
:
: No. 1350 C.D. 2016
Appeal of: Robert R. Sanders, Pamela : Argued: March 6, 2017
Sanders, Corale Bortz, David Bortz, :
Deborah Lee Pickett, VMD, James :
Russo, Darin H. Hein, Brenda L. Hein :
and Betsy Adams :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI               FILED: March 29, 2017

Robert R. and Pamela Sanders, Corale and David Bortz, Deborah Lee Pickett, VMD, James Russo, Darin H. and Brenda L. Hein, and Betsy Adams (Objectors) appeal from an order of the Court of Common Pleas of Berks County (trial court) reversing the decision of the Jefferson Township Zoning Hearing Board (Board) and reinstating the issuance of a zoning permit for a veterinary clinic home occupation to Joan and Douglass Van Tiggelen (Van Tiggelens). For the reasons that follow, we affirm the trial court.

**I.**

The Van Tiggelens own property at 173 Koenig Road, Bernville, Pennsylvania (Property), a 33-acre parcel located within the R-2 Medium Density Residential District (R-2 District) in Jefferson Township (Township) on which their home is located. Joan Van Tiggelen is a veterinarian and desires to operate a part-time veterinary clinic at the Property as a home occupation. The Jefferson Township Zoning Ordinance (Ordinance) defines "Home Occupation" as:

> **A use customarily conducted entirely within a dwelling unit and carried on by the inhabitants thereof,** which is clearly incidental and secondary to the use of the dwellings and which does not change the character thereof or have any exterior evidence of such secondary use other than a small name plate, and in connection therewith there is not involved the keeping of a stock in trade for sale to the general public.

(Reproduced Record (R.R.) at 239a.) (Emphasis added.) Home occupations located on the same lot with the permitted principal use are permitted accessory uses[1] in the Township's R-2 District.[2]

---

[1] The Ordinance defines an accessory use as:

> A use that (1) is subordinate to and serves a principal building or principal use; (2) is subordinated in area, extent, or purpose to the principal building or principal use served; (3) is located on the same zoning lot as the principal building or use served; (4) is not used for dwelling purposes nor normally occupied by personnel associated with any use; and (5) is not attached to the principal building by covered passageway, has a wall more than 3 feet high, and shares no wall in common with the principal building.

**(Footnote continued on next page…)**

The Van Tiggelens submitted a written plan to the Township's Zoning Officer proposing to construct a separate building on the Property to house both the veterinary clinic and residential garages. On March 1, 2008, Gary L. Bashore, the Township's Zoning Officer at the time, issued a letter to the Van Tiggelens stating that he had reviewed their proposed plan and, in his opinion, it met the requirements of Section 502 of the Ordinance relating to Home Occupations.[3] Apparently, for reasons unexplained, this plan lay dormant.

_____

**(continued…)**

(R.R. at 250a.)

[2] *See* Section 403.2 of the Ordinance (R.R. at 260a.) Section 403.2 specifies that home occupations are permitted accessory uses in the district "pursuant to Section 502," which contains the Ordinance's Home Occupation Regulations. (*Id.*)

[3] Section 502 of the Ordinance states:

> All dwelling units and accessory structures with direct access to a public street may be used for the practice of a home occupations [sic], provided such occupation is clearly incidental or secondary to the use of the property as a residence, and further provided that such use of the dwelling or accessory structure does not change the character thereof or have any exterior evidence of such secondary use other than a small nameplate as provided in this Ordinance.

(R.R. at 292a.) Section 502.1 of the Ordinance provides the standards for home occupations, stating:

> Home occupations shall be limited to the employment on the premises of not more than 2 paid or unpaid assistants or employees at any one time.

> In addition to the off-street parking spaces required for the residence units, off-street parking spaces must be provided as required in Section 507.1.a.

**(Footnote continued on next page…)**

3

**(continued…)**

Home occupations shall not occupy more than 25% of the total floor area of the dwelling unit.

Home occupations shall be subject to the following limitations:

a. No emission of unpleasant gases or other odorous matter shall be permitted;

b. No emission of noxious, toxic, or corrosive gases or fumes injurious to persons, property, or vegetation shall be permitted;

c. No glare and heat from any home occupations shall be permitted;

d. No discharge is permitted into a reservoir, sewage or storm disposal system, stream, open body of water, or into the ground, of any materials in such a way or of such nature or temperature as could contaminate any water supply, or damage or be detrimental to any sewage system or any sewage treatment process, or otherwise could cause the emission of dangerous objectionable elements;

e. No vibration perceptible beyond the dwelling unit or building in which the home occupation is conducted shall be permitted;

f. No noise shall be audible beyond the dwelling unit or building in which the home occupation is conducted whichever shall be the smaller, which exceeds the average intensity of street traffic at the front lot line;

g. No emission of any smoke shall be permitted;

h. Electric or electronic devices shall be shielded in such manner as not to interfere with radio or television reception or transmission of any kind.

**(Footnote continued on next page…)**

4

Over four years later, on November 19, 2012, the plan apparently was reactivated. This time, the Township's new Zoning Officer, Robin R. Royer (Royer), by letter, informed the Van Tiggelens that according to Section 403.1 of the Ordinance, a veterinary office is not a permitted use in an R-2 District and if they desired to continue with the same plan, the Van Tiggelens must obtain a variance from the Board to operate a veterinary clinic on the Property. In a subsequent letter, Royer further explained that a variance was needed because the proposed veterinary clinic would be housed in an accessory structure, it was not considered a home occupation, and having a clinic on-site would alter the character of the principal use of the Property as residential.

The Van Tiggelens then submitted a new proposal seeking both a building and zoning permit to construct an addition to their house from which to operate a veterinary clinic home occupation rather than in an accessory structure. On December 10, 2014, the Township's new Zoning Officer, Daniel E. Levengood (Zoning Officer Levengood), issued a building and zoning permit to the Van Tiggelens to construct a 28-foot by 45-foot addition to their residence for use of the Property as a veterinary clinic home occupation. Issuance of the zoning permit was conditioned upon 14 additional restrictions.[4]

---

**(continued…)**

(R.R. at 292a-293a.)

[4] Those restrictions were as follows:

  1. There will be one full-time employee who shall be a resident of the dwelling unit at 173 Koenig Road[.]

**(Footnote continued on next page…)**

2. There will be one part-time assistant who is not a resident of the dwelling unit at 173 Koenig Road.

3. The hours of operation will be Monday through Thursday from 1:00 p.m. to 6 p.m.

4. Surgeries will be scheduled every other Tuesday from 9:00 a.m. to 6:00 p.m.

5. Appointments will be scheduled from 2:00 p.m. to 5:00 p.m. at 30-minute intervals.

6. The home occupation is permitted to have a sign as long as it does not exceed 2 square feet in size and is located in accordance with § 506.a.9 of the [] Ordinance.

7. Deliveries will occur only when orders are placed and generally performed by UPS or FedEx weekly. Hill [sic] Pet food will be delivered once a month.

8. All medical wastes are removed from the premises by a medical waste service.

9. Emergencies are referred to Animal Emergency Clinic in Shillington, PA.

10. Allied Veterinary Cremation comes every Tuesday to see if any cremations are required. Cremations will [not be] done on the site.

11. The driveway will be equipped with non-glare residential lighting.

12. No animals will be spending the evening at the clinic.

13. The veterinarian clinic will not offer kennel services on the property.

**(Footnote continued on next page…)**

## II.

Objectors, who are property owners bordering or in close proximity to the Property, appealed the issuance of the zoning permit to the Board, claiming a veterinary clinic does not meet the Ordinance's definition of a home occupation because it is not a use customarily conducted entirely within a dwelling unit. Objectors also claimed that the 14 additional restrictions placed on the permit were invalid and could not properly be enforced, requiring the permit to be voided. They further argued that veterinary clinics are allowed in the Township's Commercial District and as an accessory use in the Agriculture Preservation District, with much stricter requirements than those listed for home occupations.

Before the Board, Zoning Officer Levengood testified that the Ordinance was vague with respect to home occupations and he referred to ordinances from other municipalities as well as his prior experience for guidance to determine what is customarily considered a home occupation. He noted that those ordinances specifically allow professional offices as home occupations, and that those ordinances define a professional office as including a doctor, surgeon, dentist, licensed professional and people offering similar medical care. In making

---

**(continued…)**

> 14. Failure to abide by these conditions as well as those listed in § 502 of the [] Ordinance will result in the Zoning Permit being immediately revoked.

(R.R. at 31a.)

7

his decision regarding the Van Tiggelens' zoning permit, he believed that a doctor's office would clearly be allowed as a home occupation under the Ordinance and he could not differentiate between a doctor's office and the proposed veterinary clinic. Zoning Officer Levengood testified that he has approved other professional offices as home occupations in residential areas, and he knows of a dog grooming business permitted to operate as a home occupation in a residential district within Berks County. Moreover, he considers a professional office, including a veterinary clinic, to be customary in this area.

Michael Comalli, VMD (Dr. Comalli) has been a practicing veterinarian since 1986 and was deemed an expert in the practice of veterinary medicine. Dr. Comalli testified that at his prior home, he received a variance to operate a veterinary clinic as a home occupation in a residential district in Marion Township. At his present home, he also obtained a variance to operate a veterinary clinic as a home occupation prior to the property being rezoned commercial. Dr. Comalli testified that there are "lots" of veterinarians who have home occupations and he provided three specific examples of friends of his who are veterinarians practicing out of their homes.

In opposition, one of the Objectors, Lee Pickett, VMD (Dr. Pickett), a veterinarian, was qualified as an expert in the practice of veterinary medicine and testified as to the typical care and general elements associated with small veterinary practices. However, Dr. Pickett did not address the issue of whether veterinary clinics are customarily conducted in residential dwellings, nor did she

8

specify if her experience with small veterinary practices was similar to that of a part-time solo practitioner such as Dr. Van Tiggelen.

After considering all of the elements generally associated with a veterinary clinic as well as the evidence presented at the hearing, the Board determined there were elements of the proposed veterinary clinic use that were not incidental or secondary to the principal use as a single-family detached dwelling, as required by both the Ordinance's definition of home occupation and its general regulations regarding home occupations. The Board also concluded there were elements of the proposed veterinary clinic use that did not meet the definition of a home occupation because they were not "customarily conducted entirely within a dwelling unit by the inhabitants thereof. . . ." (Section 201 of the Ordinance, R.R. at 239a.) The Board found that the proposed plan also failed to meet the definition of a home occupation because there were elements that would change the character of the use, there would be evidence of the secondary use visible on the exterior of the home, and the proposed sale of prescription products and other pet care goods would constitute "the keeping of a stock in trade for sale to the general public." (*Id.*) Because the proposed veterinary clinic did not meet the definition of a home occupation or the general provisions of the Ordinance's home occupation regulations, the Board granted Objectors' appeal and revoked the zoning permit.[5]

---

[5] Objectors did not challenge the issuance of the building permit and it is not at issue in this appeal.

**III.**

The Van Tiggelens appealed to the trial court which reversed, finding that the Board abused its discretion because there was not substantial evidence to support the Board's finding that a veterinary clinic was not customarily a home occupation. Based on Zoning Officer Levengood's testimony that other professionals such as dentists and physicians have offices in their homes and operate similar equipment to that of veterinarians, and given the lack of any countervailing testimony, the trial court held that the only substantial evidence proffered was that the veterinary clinic does qualify as a home occupation. It also discounted the Board's conclusion that Dr. Van Tiggelen would keep stock in trade for sale to the general public as the only stock for sale would be prescriptions and prescription pet food available for her patients. It also noted that the Board erred in finding that the issuance of the permit would harm the health, welfare and safety of the community because Objectors failed to produce any evidence that such harm would occur. In addition, the trial court explained the fact that the Ordinance made specific provisions for veterinary offices within its Agricultural Preservation Zone was inapposite as the issue was whether the proposed veterinary clinic met the requirements for a home occupation. For these reasons, the trial court granted the Van Tiggelens' appeal and ordered that the zoning permit be reinstated. This appeal followed.[6]

---

[6] Our review in a zoning case where the trial court takes no additional evidence is limited to determining whether the Board committed an error of law or an abuse of discretion. *Agnew v. Bushkill Township Zoning Hearing Board*, 837 A.2d 634, 636 n.4 (Pa. Cmwlth. 2003).

10

## IV.

Objectors argue that the trial court abused its discretion because the Board's decision was supported by substantial evidence. Citing to *In re Rural Route Neighbors*, 960 A.2d 856 (Pa. Cmwlth. 2008) and *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807 (Pa. Cmwlth. 2005), Objectors argue that the trial court was bound by the Board's determinations of witness credibility and evidentiary weight, and the trial court erred in substituting its interpretation of the evidence for that of the Board. However, in a zoning appeal, where the trial court takes no additional evidence, we are not reviewing the trial court decision but, like the trial court, we are limited to determining whether the Board committed an error of law or an abuse of discretion. *Agnew v. Bushkill Township Zoning Hearing Board*, 837 A.2d 634, 636 n.4 (Pa. Cmwlth. 2003).

The definition of home occupation in the Ordinance states, in pertinent part, that the use must be "customarily conducted entirely within a dwelling unit and carried on by the inhabitants thereof, which is clearly incidental and secondary to the use of the dwellings and which does not change the character thereof. . . ." (Section 201 of the Ordinance, R.R. at 239a). Similarly, Section 502 contains the Ordinance's home occupation regulations and states that dwelling units "may be used for the practice of a home occupation[], provided such occupation is clearly incidental or secondary to the use of the property as a residence, and further provided that such use of the dwelling or accessory structure does not change the character thereof. . . ." (R.R. at 292a) (emphasis added).

11

This language is typical in local zoning ordinances and there is a long line of cases regarding what occupations are customarily conducted in a home, clearly incidental to residential use or customarily associated with residential dwellings. *See, e.g., Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment*, 716 A.2d 600 (Pa. 1998); *Agnew*; *Platts v. Zoning Hearing Board of Borough of Bradford Woods*, 654 A.2d 149 (Pa. Cmwlth. 1995). These cases recognize that the standard is necessarily a flexible one that depends upon both the language of the ordinance and the specific facts of the case. In his seminal treatise on Pennsylvania zoning law, Ryan notes that accessory use questions are intensely fact dependent determinations that examine whether a particular subordinate or secondary use is appropriately associated with the principal use in the specific factual situation involved. Robert S. Ryan, Pennsylvania Zoning Law and Practice, § 4.3 (2004); *see also Hess v. Warwick Township Zoning Hearing Board*, 977 A.2d 1216, 1224 (Pa. Cmwlth. 2009). Moreover, our Supreme Court has held "that zoning boards and courts may take notice of what business occupations are customarily conducted in residential dwellings based on general experience and understanding." *Allegheny*, 716 A.2d at 603-04.

The only evidence offered before the Board as to whether the use was customary in a residential district was that of Zoning Officer Levengood who testified that a veterinary clinic was a customary home occupation, and Dr. Comalli who testified that he operates his veterinary clinic as a home occupation and knows other veterinarians who conduct their practices from their homes both in general and in this particular area. Objectors failed to present *any* evidence to rebut that testimony. As previously mentioned, Objector Dr. Pickett testified as to

12

the typical care and general elements associated with small veterinary practices, but did not address whether veterinary clinics were home occupations. Moreover, the standards for home occupations set forth in Section 502.1, by allowing up to two part-time employees, requiring off-street parking for the use, and requiring detailed noise and environmental emission requirements supports the conclusion that a home occupation need not be one in which only the home's occupants conduct the business with only occasional customers. Because the record contains no evidence to support the Board's conclusion that the proposed veterinary clinic is not a use customarily conducted within a dwelling unit as required by the Ordinance, the Board abused its discretion in so finding. *See Glenside Center, Inc. v. Abington Township Zoning Hearing Board*, 973 A.2d 10, 15 n.11 (Pa. Cmwlth. 2009) ("[a]n abuse of discretion is found where the findings of the Board are not supported by substantial evidence.").[7]

---

[7] Contrary to Objectors' assertion, the trial court did not err in finding it is of no consequence that a veterinary clinic is a permitted use within the Township's Agricultural Preservation Zone. As the trial court correctly noted, what is at issue is whether the veterinary clinic proposed here meets the Ordinance's definition of and regulations pertaining to home occupations, not whether the proposed use is permitted within other districts. Just because a certain profession is permitted as of right within one particular zoning district does not preclude it from qualifying as a home occupation as well. For example, in an Agricultural Preservation Zone, a veterinary clinic that is allowed as of right could include the treatment of large animals which, in all likelihood, would not be permitted as a home occupation under the standards set forth for home occupations in the Ordinance.

Also, while this issue was not specifically raised in Objectors' brief on appeal, we note our agreement with the trial court that there is not substantial evidence to support the Board's finding that Dr. Van Tiggelen's sale of prescription medications and prescription pet food would constitute the keeping of a stock in trade for sale to the general public. Dr. Van Tiggelen testified that she does not want to be a retail store open to the public. The only "stock for sale" are products specifically prescribed for her patients and, therefore, members of the general public could not walk in off the street to purchase goods for their pets.

13

Accordingly, we affirm the order of the trial court.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Joan and Douglass : 
Van Tiggelen from the Decision : 
Dated April 22, 2015, of the Jefferson : 
Township Zoning Hearing Board : 
 : 
 : No. 1350 C.D. 2016
Appeal of: Robert R. Sanders, Pamela : 
Sanders, Corale Bortz, David Bortz, : 
Deborah Lee Pickett, VMD, James : 
Russo, Darin H. Hein, Brenda L. Hein : 
and Betsy Adams :

# **O R D E R**

AND NOW, this 29th day of March, 2017, the order of the Court of Common Pleas of Berks County in the above-captioned matter is hereby affirmed.

_____
DAN PELLEGRINI, Senior Judge