**RESIDENTS AGAINST MATRIX and Dana Weyrick, Appellants,**

v.

**LOWER MAKEFIELD TOWNSHIP and Matrix/AEW Acquisitions, L.L.C. and Bellemead Development Corporation.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 5, 2003.

Decided Feb. 13, 2004.

Reargument or Reconsideration En Banc Denied April 19, 2004.

Robert J. Sugarman, Philadelphia, for appellants.

Jeffrey P. Garton, Langhorne, for appellees.

BEFORE: COLINS, President Judge, and LEAVITT, J., and KELLEY, Senior Judge.

OPINION BY President Judge COLINS.

Residents Against Matrix (RAM)[1] has filed an appeal from the April 29, 2003 Order of the Court of Common Pleas of Bucks County (trial court) affirming the decision of the Lower Makefield Township Board of Supervisors (Board of Supervisors) granting final subdivision approval for what is known as the Octagon Center and land development approval for construction of Phase I of the Octagon Center.

The following case overview has been adopted from the opinion of this Court filed July 12, 2002.[2] In September 1988, Lower Makefield Township (Township) and Bellemead Development Corporation entered into a master plan approval agreement following the Township's approval of the developer's master land development plan for approximately 186 acres of real estate.[3] The entire tract was zoned C–3, General Business/Industrial. The 1988 plan and agreement provided for a commercial and industrial office park with 1,282,000 square feet of gross leasable space to be developed in accordance with the existing zoning, subdivision, and land development ordinances. The plans were reviewed and ultimately approved by the Township planning commission, the board of supervisors, and the zoning hearing board.

In May 1999, Matrix/AEW Acquisitions and Bellemead entered into an agreement to purchase the land on which Matrix's Octagon Center is proposed to be constructed. Matrix proposed to the Township amendments to the master plan approval agreement, which included certain other uses in place of the approved commercial and industrial uses. At a public meeting on December 4, 2000 the amendment was approved. The amendment agreement states, "the permitted uses shall include and be limited to Class A office, large retail, limited service hotel, and retail pad uses as those uses are defined and permitted pursuant to the Township Zoning Ordinance within the C–2 and C–3 zoning districts." (Amendment Agreement, p. 2.) The amendment agree-

---

1. Residents Against Matrix is a Pennsylvania not-for-profit organization dedicated to preserving open space in Lower Makefield Township and to opposing the Matrix Development (formerly owned by Bellemead).

2. *Residents Against Matrix v. Lower Makefield Township,* 802 A.2d 712 (Pa.Cmwlth.), *appeal denied,* 572 Pa. 716, 813 A.2d 847 (2002).

3. Of the 186 acres, 141 are located in Lower Makefield Township and the remainder in Middletown Township, Bucks County.

ment sets forth the number and gross leasable area for large retail stores and a limited service hotel and provides for an outside garden area to be attached to a large retail store.

RAM's first appeal was dismissed by the trial court on the basis that it lacked jurisdiction to review the issues because the issues were raised in an untimely fashion. This Court affirmed that decision.[4] While that litigation was being pursued, on January 21, 2002 without submitting the proposal to the zoning hearing board, and over the objection of the planning commission, the Lower Makefield Township Board of Supervisors approved the final subdivision and land development plans for Phase I of the Octagon Center. On February 12, 2002, RAM appealed that decision to the trial court. Without taking any additional evidence, the trial court denied the appeal, concluding that the plan approval did not involve zoning by contract[5] and rejecting appellants' claim that the mere approval of a land development plan, which sets forth specific uses for the land, amounts to zoning approval of the uses. The remaining issues involve the applicability of the zoning ordinance, a claim that the definition of "large retail stores" precludes "big box stores," and a challenge to opening of a shopping center in a C–3 zoning district. The trial court found that those issues, not having been presented to the zoning hearing board, were not ripe for review, as no municipal action had occurred. The trial court further noted that issues involving the type of businesses to be opened are zoning issues and as such any appeal would first be taken to the Lower Makefield Township Zoning Hearing Board. RAM took an appeal to this Court. We agree with the

position of RAM that the action of the Board of Supervisors is in error, as the zoning hearing board had to review the plans prior to the grant of final subdivision approval.

In a land use appeal, where the trial court does not take additional evidence, this Court's scope of review is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *Herr v. Lancaster County Planning Commission,* 155 Pa. Cmwlth. 379, 625 A.2d 164 (1993), *appeal denied,* 538 Pa. 677, 649 A.2d 677 (1994). The governing body abuses its discretion when its findings of fact are not supported by substantial evidence. *Id.*

The core issue presented is whether the Board of Supervisors erred in issuing its January 21, 2002 decision, approving and granting Matrix's application for final subdivision and land development approval for Phase I of the Matrix development, which includes the development of two large retail uses and an office building, when the matter had not yet been submitted to the zoning hearing board. Matrix incorrectly contends this issue was addressed in the prior appeal and may not be raised again. The prior appeal was from a decision of the Board of Supervisors regarding the subdivision and development of the entire land tract. At this juncture, development is in phases. Currently, the matter before Court is limited to the development of Phase I. The Board of Supervisors' issuance of approval to develop the land, does not, and in fact cannot, render a decision upon the use of the land. Instead, the use of the land, and each building erected thereon, must comply with the various zoning ordinances that govern use and occu-

---

4. *See supra* n. 2.

5. Zoning by contract is disfavored in this Commonwealth. *Carlino v. Whitpain Investors,* 499 Pa. 498, 453 A.2d 1385 (1982).

pancy of the buildings, the materials used to construct the buildings, the depth of the footings, and a plethora of other regulations, including the procedural requirements of the Municipalities Planning Code and the ordinance of the municipality.

This rule of law is set forth in Section 909.1 of the Pennsylvania Municipalities Planning Code (MPC),[6] which clearly instructs that a zoning hearing board has exclusive jurisdiction to hear and render final adjudications in applications for variances, whereas a municipality's governing body has exclusive jurisdiction to hear and render final adjudications in applications for approval of subdivisions or land developments. *Graham v. Zoning Hearing Board,* 520 Pa. 526, 555 A.2d 79 (1989). Thus, RAM's argument that the Board of Supervisors was without authority to approve a subdivision plan without having first required the zoning hearing board to consider the zoning issues is not entirely without merit.

In *Graham,* Mr. Chief Justice Zappala, writing for a majority of the Court[7] stated

It is clear that any question and restriction on the use or development of the property be considered by the governing body at the fact-finding phase of the procedure. Any zoning problems must be considered at the planning stage for the purpose of approving or disapproving the plan. Otherwise, the governing body would not have the required information to make an informed decision.

520 Pa. at 532, 555 A.2d at 81–82.

*Sub judice,* the Board of Supervisors has authorized the development of Phase I without the matter having been submitted to the zoning hearing board. The authorization of the Board of Supervisors in no

way comments upon the types of businesses, which may open in Phase I; however, the "use" of the building, is an issue left to the zoning hearing board, and approval of Phase I cannot occur without the plan being first approved by the zoning hearing board. The subject of RAM's challenge herein focuses on the use of the buildings; however, as noted by the trial court, that issue is not ripe for review because the matter was not submitted to the zoning hearing board. However, we disagree with the trial court that the matter may be presented to the zoning hearing board in piecemeal fashion. Rather, *Graham* anticipates, nay requires, that zoning issues be considered in the planning stage for the purpose of approving or disapproving the plan. "The fact that any changes in zoning laws will not affect a pending plan supports the conclusion that zoning plays an important role in determining whether to approve or disapprove a plan." *Bell Atlantic Mobile Systems v. Zoning Hearing Board,* 676 A.2d 1255, 1264 (Pa.Cmwlth.1996), *appeal granted and affirmed sub nom., Crown Communications v. Zoning Hearing Board,* 550 Pa. 266, 705 A.2d 427 (1997) (quoting *Graham,* 520 Pa. at 532, 555 A.2d at 81–82). While the trial court is correct that many of RAM's issues are not ripe for review as the issues have not been presented to the zoning hearing board, the one meritorious issue presented is that the Board of Supervisors improperly approved the land development without the plans having first been reviewed and approved by the zoning hearing board.

Accordingly, the order of the trial court is reversed.

---

6. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10909.1, added by Section 87 of the Act of December 21, 1988, P.L. 1329.

7. Mr. Justice Larsen concurred in the result, Mr. Justice McDermott dissented.

## ORDER

AND NOW, this 13th day of February 2004, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is reversed.