**Gerard HESS and Cynthia Hess, Appellants**

v.

**WARWICK TOWNSHIP ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued March 31, 2009.

Decided July 15, 2009.

Reargument Denied Sept. 10, 2009.

Blake E. Dunbar, Jr., Trappe, for appellants.

Patrick C. O'Donnell, West Chester, for appellee.

BEFORE: LEADBETTER, President Judge, PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Gerard and Cynthia Hess (Appellants) appeal from the order of the Court of Common Pleas of Chester County (common pleas) that affirmed the decision of the Zoning Hearing Board of Warwick Township (ZHB). The ZHB sustained the Hess's appeal from an enforcement notice citing them for violation of the kennel regulations, denied their request for a use variance and denied the Hess's request for a ruling that they may keep twenty-one Siberian Husky dogs on their property as an accessory use. In the present appeal, the Appellants challenge the last of these rulings.

Appellants reside at 2841 St. Peters Road, a 3–acre parcel near the edge of the R–1 Residential District where that dis-

trict abuts the RA—Residential–Agriculture District. As the zoning map depicts, the Hess parcel is located in the R–1 District near parcels ranging from less than one acre to approximately five acres and, along one property line it abuts the RA– District, with notably larger lots. The Hess property is improved with a single family detached dwelling and a two-car garage with an attached workshop. A portion of the attached workshop has been converted into a heated and air-conditioned 18 feet by 18 feet shelter, where Appellants house seventeen Siberian Husky dogs in individual dog crates. The dogs have access from the indoor shelter to an outside yard measuring 40 feet by 50 feet, which is enclosed by a six foot high fence. Additionally, Appellants keep four dogs in their principal residence, making a total of twenty-one dogs that reside on the property.[1] Appellants do not board, groom, train, raise or breed dogs belonging to other people. The Huskies are maintained as pets, occasionally entered at dog shows and used as sled dogs.

On June 6, 2006, the Township's zoning officer issued a notice of violation for failure to comply with the kennel regulations in Section 1925 of the zoning ordinance. Section 1925 authorizes kennels in the B–I (Business) District by special exception and applies when five or more dogs are "kept, boarded, groomed, trained, raised or bred."[2] Appellants filed a timely appeal of the violation notice and alternatively requested a use variance. Subsequently, Appellants amended their application to assert that their dog shelter and its use are permitted as an accessory structure and use.[3]

In the R–1 District, the relevant regulations state, as follows:

### Section 501—Use Regulations

A. A building may be erected, altered or used and land may be used or occupied, subject to the provisions of Article 15 and Article 16, for any of the following uses and no other:

1. Single-family detached dwellings.

2. Municipal use.

B. Permitted Accessory Uses

1. Accessory uses on the same lot and customarily incidental to the princi-

---

1. At argument on March 31, 2009, counsel for the Appellants stated that the number of dogs maintained on the property had decreased to a total of fifteen.

2. **Section 1925**–Kennel Regulations

    A. Whenever five (5) or more dogs, cats or like domesticated animals, or any combination thereof, are kept, boarded, groomed, trained, raised or bred, the following shall apply:
    1. Kennels may be permitted in the B–1, Business District, as a Use by Special Exception.
    2. A Kennel shall be on a lot with a minimum lot area of two (2) acres.
    3. A one hundred (100) foot setback shall be maintained along all lot lines for any building.
    4. Fencing with a minimum height of six (6) feet shall be installed around any Kennel building or Kennel Run which involves a dog run or where dogs or other animals are outside. Such fencing shall be maintained in good condition during the life of the use.
    5. All noise standards of Section 1913 shall apply.
    6. All Kennels shall operate under a plan approved by the Township for the disposal of animal waste.

3. Appellants raised the issue of accessory use as an amendment to their appeal of the violation notice. The ZHB and common pleas treated the issue as one arising from a request for an ordinance interpretation. Both parties have consistently considered the keeping of the dogs to be a use subject to zoning regulation. *See Woll v. Monaghan Tp.*, 948 A.2d 933, 940 n. 7 (Pa.Cmwlth.2008) (noting with approval that other jurisdictions treat keeping dogs and other household pets as a use regulated by zoning).

pal uses permitted in Section 501.A, subject to the provisions of Section 1908.

Warwick Twp. Zoning Ord. Section 501.

Section 1908—Accessory Uses, Buildings and Structures

Accessory uses, buildings, and structures shall include, but not necessarily be limited to the following:

. . . .

B. Uses, Buildings, and Structures accessory to Dwellings

1. Detached private garage, private parking space, private stable, barn, shed, shelter for pets owned by the property owner, swimming pool, tennis court, bath house and private greenhouse.

Warwick Twp. Zoning Ord. Section 1908. Section 201 of the zoning ordinance defines "accessory use" as:

A use conducted on the same lot as a principal permitted use to which it is related. A use which is clearly incidental to and customarily found in connection with, a particular principal permitted use of a lot.

Warwick Twp. Zoning Ord. Section 201.

The ZHB heard the appeal over the course of six hearings and issued an oral decision on February 15, 2007, sustaining the appeal from the notice of violation, denying the use variance application and rejecting the contention that keeping twenty-one dogs constituted an accessory use. The following day, by a letter dated February 16, 2007, the ZHB's solicitor notified the Appellants of the ZHB's decision, explaining that there exists no violation of the kennel regulations because these apply to business establishments, not to sheltering personal pets. The solicitor's letter further explained that the Appellants failed to prove that keeping twenty-one dogs is customarily incidental to their residential use and, thus, failed to establish that sheltering the dogs qualified as a permitted accessory use. Subsequently,

the ZHB issued a more comprehensive decision setting forth in detail its findings of fact and conclusions of law, in pertinent part, stating:

The word "establishment" in the definition of the term "kennel" implies a business operation and the legislative decision in Section 1925A.1 to permit kennels as a use by special exception in the B–1 Business District supports such an implication. Therefore, based upon the unique facts in this record, Applicants are not operating a "kennel."

However, in order for Applicants to bring their use of the accessory structure referred to as the "dog room" or "shop" structure within the meaning of Sections 501 B.1 and 1908 B.1, Applicants must demonstrate that the keeping of 17 dogs as pets within a "shelter for pets owned by the property owner" (plus 4 additional dogs kept within the residence) is "customarily incidental" to a single-family residential dwelling use. Applicants produced no evidence to show that the keeping of 21 dogs upon a residential property is a customarily incidental accessory use in the Township. Accordingly, the Board declines to find that Applicants keeping of 21 dogs as pets upon the subject property is a proper accessory use under Section 1908 B.1 of the Zoning Ordinance.

ZHB Decision at 7–8.

The Appellants appealed the ZHB's decision to common pleas contending that inasmuch as the zoning ordinance specified "shelters for pets owned by the property owner" as a permitted accessory use and did not set a limit on the number of pets allowed, the ZHB erred in arbitrarily concluding that the Appellants kept more dogs than could be considered customarily incidental to residential use. Common pleas affirmed the ZHB, opining that the Appellants failed to prove that housing

twenty-one dogs is customary in connection with or incidental to residential dwellings in the Township or the County and, thus, failed to establish that their use qualifies as a permitted accessory use. Common pleas opined that:

> [w]hile in the instant case the keeping of household pets *is* an accessory use by the terms of the Ordinance, the question presented is the permissible intensity of that use in terms of the number of dogs that may be kept upon a residential property. In my opinion, when sections 1925 and 1908 are read together in conjunction with the pertinent definitions, the permissible intensity is suggested but not clearly delineated. Examining the evidence in the record on this point, I agree with the Board's conclusion that appellants did not prove that keeping 21 dogs on a residential property is a customarily incidental residential accessory use. Recognizing that appellants' use is located on a residential property of limited acreage, it was incumbent upon them to prove that in Chester County generally and in Warwick Township more specifically dogs in these numbers are customarily found in connection with and as uses incidental to residential dwellings. They did not carry this burden and proffered no comparable examples or other proof that the keeping of 21 dogs is clearly incidental and customarily found in connection with a residence.

*Hess v. Warwick Twp. Zoning Hrg. Bd.,* (No. 07–02347, filed April 4, 2008), slip op. at 17.

The Appellants filed the instant appeal, reasserting that the ordinance explicitly authorizes the sheltering of pets as an accessory use without any restriction as to the number of animals and, thus, they have a legal right to maintain all of the dogs. Appellants argue that having shown that their primary use is residential and that their detached shelter houses their pets, they satisfied their proof burden. Specifically, they state in their brief: "Based on the fact that the use is clearly a permitted accessory use, the number of pets on the property should not be of concern to the Board, nor should the fact that other properties in the community do not maintain as many pets." Appellants' Brief at 23. Appellants further argue that common pleas erred in considering the numerical parameters in the definition of "kennel" and in the kennel regulations to conclude that the ordinance does not permit the sheltering of an unlimited number of pets as an accessory use to a residence.

In *Platts v. Zoning Hearing Board of the Borough of Bradford Woods,* 654 A.2d 149 (Pa.Cmwlth.1995), our court rejected a similar assertion that the ordinance permitted the use in question without consideration as to whether it was customarily incidental to the principal use. Specifically, in *Platts,* homeowners asserted that the zoning ordinance, construed in the manner permitting them the broadest use, permitted their home-based operation of a commercial and luxury home construction firm (maintained by husband) and a marketing, decorating and consulting service (maintained by wife). Homeowners asserted that the businesses qualified as home occupations, which were deemed under the ordinance to be permitted accessory uses. The applicable ordinance defined accessory use as one "customarily incidental and subordinate to the principal use and located on the same lot as the principal use." *Id.* at 150. In addition, the ordinance provided for "home occupations," stating, in pertinent part, that "the pursuit of vocational or avocational interests by a resident *shall be deemed an accessory use* to a dwelling." *Id.* at 151 (emphasis added). The court refused to rule that homeowners' businesses, being the pursuit of their vocational interests, must be deemed accessory uses without reference to whether the

businesses were customarily incidental and subordinate to the principal use. Rather, the court ruled that in light of the ordinance's stated purpose to "provide a pleasant, attractive, healthy environment" and to concentrate "non-residential uses in areas where streets and utilities can provide necessary services and where conflicts with other uses can be minimized," the accessory use and home occupation sections must be read together. *Id.* at 152. Thus, the court considered whether the businesses qualified as customarily incidental to the residential use, ultimately concluding that they did not.

Appellants' argument in the present case similarly urges that we look only to the provision authorizing the sheltering of pets and ignore the requirement that the use qualify as customarily incidental to the primary residential use. Here, the ordinance is written in a manner that more explicitly compels consideration of customarily incidental than the ordinance applicable in *Platts*. First, we note that as in *Platts*, the present ordinance states specific purposes that evidence a legislative intent to apply "customarily incidental" as a limitation on the intensity of the accessory uses allowed in a residential zone.[4] Second, and more importantly, the accessory use provision is structured in a manner that explicitly directs that "customarily incidental" be considered in every case. Section 501B.1 authorizes accessory uses if three criteria are met. The use must be "on the same lot and customarily incidental to the principal uses permitted in Section 501.A, subject to the provisions of Section 1908." *See* Zoning Ord. Section 501B.1.

Here, there exists no dispute that the use occurs on the same lot as the principal use and that it does constitute the sheltering of pets under Section 1908 B.1. However, it is not so clear that keeping twenty-one large dogs qualifies as customarily incidental to residential use. While generally keeping pets is commonly understood to be a widespread and hence customary activity in association with residential use, this reasonable and common understanding cannot rationally be extended to encompass the keeping of an unlimited number of any sized animals. Hence, the crux of the present dispute centers on whether keeping so many dogs satisfies the requirement that the activity be customarily incidental to Appellants' residential use and the answer to this question depends on a determination as to the standard applicable to determining what constitutes "customarily incidental."

In construing what is meant by "customarily incidental," we note that Appellants are correct in their assertion that generally a zoning ordinance should be construed in a manner that does not, by mere implication, fetter a landowner's reasonable use of his land. Thus, the permissive nature of an ordinance provision should be taken in its broadest sense and restrictive provisions should be construed in the strictest sense. *See Burgoon v. Zoning Hrg. Bd. of Charlestown Tp.,* 2 Pa.Cmwlth. 238, 277 A.2d 837, 841 (1971). *See also* Section 603.1 of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L.1329, 53 P.S. § 10603.1. However, this rule of construction yields where

---

4. Particularly relevant to our rejection of the premise that the Warwick Township Zoning Ordinance permits the keeping of an unlimited number of large dogs as pets without any consideration as to whether the number kept qualifies as customarily incidental are the stated regulatory purposes to "preserve environmental resources through the sensitive use and treatment of land, water, air, flora and fauna" and "preserving and protecting sensitive hydrological features such as streams, water bodies." Ordinance Section 103C and E.

the intent of the local legislative body can be discerned with the aid, if necessary, of the usual interpretational tools, such as looking to the structure of the ordinance as a whole to ascertain legislative intent. *See Bonasi v. Haverford Tp. Bd. of Adjust.*, 382 Pa. 307, 115 A.2d 225 (1955); *Borough of Pleasant Hills v. Zoning Bd. of Adjust. of the Borough of Pleasant Hills*, 669 A.2d 428 (Pa.Cmwlth.1995). *See also Broussard v. Zoning Hrg. Bd. of Adjust. of Pittsburgh*, 589 Pa. 71, 81, 907 A.2d 494, 500 (2006); *City of Hope v. Sadsbury Tp. Zoning Hrg. Bd.*, 890 A.2d 1137, 1143–44 (Pa.Cmwlth.2006). While "customarily incidental" is not defined in the ordinance, we conclude its meaning is ascertainable. In ascertaining the term, we initially note the irrationality in the zoning scheme suggested by Appellants argument. Under that construct, a landowner would be permitted to keep an unlimited number dogs in a residential zone as an accessory use regardless of the size of the dogs, the size of the property or the surrounding properties and without regulation as to set backs, fencing or proper waste disposal, while more than four dogs kenneled in a business district are subject to such regulation. In order to afford the ordinance a more rational construction, the term "customarily incidental" must be interpreted as imposing some reasonable limitation on the number of dogs and, thus, the intensity of the land impact brought to bear by the alleged accessory use.[5]

The ZHB and common pleas treated "customarily incidental" as a narrow question of fact, concluding that, having failed to show that other residential property owners in the surrounding area maintain a large number of dogs as pets, Appellants failed to meet their proof burden. Many cases indicate that the landowner bears such a burden, which requires proof that other landowners maintain the same or sufficiently similar use. *See e.g., Tennyson v. Zoning Hrg. Bd. of West Bradford Tp.*, 952 A.2d 739, 745 (Pa.Cmwlth.2008) (stating, "applicant must prove that the use in question is secondary to the principle use and that the use is customarily found with the principle use"); *Champaine v. Zoning Hrg. Bd. of East Bradford Tp.*, 30 Pa.Cmwlth. 544, 374 A.2d 752, 754 (1977) (ruling that landowner's evidence was insufficient to show that "a significant percentage of like principal uses in the area have accessory uses of the nature and extent in question"). In the present case, Appellants clearly presented such a paucity of evidence to meet this burden that we cannot conclude that common pleas erred in sustaining the ZHB's decision on this ground. However, reliance on the inadequacy of Appellants' evidence, thus treating "customarily incidental" as purely an issue of fact regarding what other landowners maintain as accessory uses, raises a troubling question as to just what evidence is required. Where courts have looked to the sufficiency of proof, the cases indicate that generally a landowner must show that others within a relevant geographic area are engaging in the same or sufficiently similar use; but it is entirely unclear what specifically qualifies as the minimum evidence necessary to satisfy this burden.

Nothing in our caselaw sheds any light on whether Appellants had to show that others kept large numbers of domestic pets of any kind, or large dogs; whether it would suffice to show that others kept many pets inside their homes or whether evidence that others kept pets in an acces-

---

5. Appropriately, common pleas also recognized this, noting that when considered together, the kennel regulations and the accessory use provision revealed a legislative intent to impose a limitation on the intensity of the accessory use, albeit a limitation not delineated by a specific number of allowed pets.

sory structure was required; whether Appellants had to show that others kept an equal or greater number of dogs or whether a lesser number would suffice and, if so, what number would be considered similar; whether Appellants had to show that others kept dogs in a similar manner on a three acre lot or whether it would suffice to show that large numbers of dogs were kept on any sized lot so long as the principal use was residential; whether the relevant geographic area constituted the neighborhood (however that may be defined) or the zoning district or the Township or the County.

In addition, ample precedent suggests that determination of what is "customarily incidental" is not necessarily a fact-based inquiry. In *Southco Inc., v. Concord Tp.*, 552 Pa. 66, 713 A.2d 607 (1998), where our Supreme Court recognized wagering on simulcasted horse races as a use accessory to a restaurant despite acknowledgement that most restaurants do not have such a component, the Court went so far as to state "an accessory use may exist even where there is no evidence that a majority, or substantial number, of similar properties are engaged in a similar accessory use." *Id.* at 75, 713 A.2d at 611.[6] As much as twenty-five years ago, our court recognized the lack of a workable standard for assessing customarily incidental:

> With respect to home occupations, which most zoning ordinances similarly define as activities "customarily" associated with dwellings, our Pennsylvania decisions have never explicitly indicated whether zoning hearing boards and courts may simply take notice of general experience as to what business occupations are customary in relation to dwell-

ings, or whether there can be a factual investigation as to what may be customary within a particular community or its region.

*Page v. Zoning Hrg. Bd. of Walker Tp.*, 80 Pa.Cmwlth. 589, 471 A.2d 1348, 1349 (1984). Citing cases decided between 1958 and 1979, the court opined that the opinions tend to indicate that courts followed the first approach, taking notice of general experience and understanding. *Id.*

In *Thomas v. Zoning Hearing Board of Benner Township*, 121 Pa.Cmwlth. 393, 550 A.2d 1045, 1047 (1988), our court reversed the ZHB's ruling that a stable for horses for the landowner's personal use was not accessory to residential use and held that the ZHB had focused too narrowly on whether the use existed within landowner's residential development rather than looking to the rural, agricultural or suburban nature of larger community. In *Klein v. Township of Lower Macungie*, 39 Pa.Cmwlth. 81, 395 A.2d 609 (1978), where the evidence established that the zoning officer had already approved tennis courts as accessory uses in the Township, the applicant was not required to show that the use existed on a substantial number of residences in his neighborhood. In *Jackson v. Lower Gwynedd Township Zoning Board of Adjustment*, 45 Pa. D. & C.2d 413 (C.P.Pa.1968), a common pleas court opined that "in determining what is a customarily incidental use [courts] must consider not only the kind but the degree of use." *See also Tennyson*, 952 A.2d at 745 (stating, "size and scope of an accessory use is a factor the ZHB must consider in determining whether a use is subordinate and incidental to a principle use").

---

6. *But see MAJ Entertainment, Inc. v. Zoning Bd. of Adjust. of Philadelphia*, 947 A.2d 841, 845 (Pa.Cmwlth.2008), noting that the *Southco* court did not eliminate the burden to prove "customarily incidental" in general but rather the court looked, in part, to state regulations that envision the wagering component of a Turf Club as being associated with a restaurant.

The term "customarily incidental" can neither be ignored as meaningless nor can it be subjected to proof in each case by some standard quantum of empirical evidence that has not been and probably can not be articulated. The proper application of "customarily incidental" in any particular case must respect the need for an understandable legal standard and yet allow for the flexibility necessary to the term's reasonable application in a variety of circumstances.

In his seminal treatise on Pennsylvania land use, Ryan recognizes the proof problem. He notes that accessory use questions are intensely fact dependent determinations that look to whether a particular secondary or subordinate use is appropriately associated with the particular principal use in the factual situation involved. Robert S. Ryan, Pennsylvania Zoning Law and Practice, § 4.3 (2004). While acknowledging that it is possible to draft an ordinance that answers the question very specifically, he states that "given the inability to anticipate everything, especially in a rapidly changing world, greater linguistic certainty is likely to freeze the ordinance into current concepts, producing results, both ways, that the municipal governing body would not have approved if it had been able to predict the future." *Id.* at 22. For example, "a reading that requires proof that a majority of principal uses of the type involved already have the accessory use at issue would stifle change in a manner not intended by the drafters of most zoning ordinances." *Id.* at 23 (noting that most municipalities would concede that a tennis court can be accessory to a residence even if it is the first private court in the municipality).

■ "Customarily incidental" is best understood as invoking an objective reasonable person standard. Under this standard, we may look not only at how frequently the proposed accessory use is found in association with the primary use (if such evidence is available, it certainly is relevant) but also at the applicant's particular circumstances, the zoning ordinance and the indications therein as to the governing body's intent regarding the intensity of land use appropriate to the particular district, as well as the surrounding land conditions and any other relevant information, including general experience and common understanding, to reach a legal conclusion as to whether a reasonable person could consider the use in question to be customarily incidental.[7] This approach respects the need for an understandable legal standard and the flexibility that is a necessary component of the analysis.

■ Applying this standard in the present case, we note that the number of large dogs at issue here far exceeds the number of animals of any kind commonly kept as household pets. While this alone might serve as the basis for our conclusion, given the extraordinary number of dogs at issue here, we also took to the zoning regula-

---

7. While such a standard cannot be said to be completely objective, it is better than a totally subjective one and it has become familiar to the bench and bar through its history of use in other legal contexts. *See In re Larsen,* 532 Pa. 326, 432, 616 A.2d 529, 582 (1992) (quoting Martineau, *Disciplining Judges for Non-Official Conduct,* 10 U.Balt.L.Rev. 225, 243 (1981) in adopting the reasonable person standard to gauge the appearance of impropriety in the context of judicial discipline). *See also, e.g., Commonwealth v. Jones,* 474 Pa. 364, 372–73, 378 A.2d 835, 840 (1977) (force constituting initiation of a *Terry* stop); *Haggart v. Cho,* 703 A.2d 522, 528 (Pa.Super.1997) (exercise of diligence in ascertaining grounds for tort claim); *Commonwealth v. Yedinak,* 450 Pa.Super. 352, 676 A.2d 1217, 1220 (1996) (scope of suspect's consent under Fourth Amendment); *Ellis v. Chicago Bridge & Iron, Co.,* 376 Pa.Super. 220, 545 A.2d 906, 911 (1988) (duty to warn); *Berman v. Radnor Rolls, Inc.,* 374 Pa.Super. 118, 542 A.2d 525, 532 (1988) (duty of care to a business invitee).

tions in order to determine the intensity of residential development intended for the district where Appellants' property is located. Here, while Appellants reside on a three-acre lot, a lot of this size is not required in this district. The zoning regulations in the R–1 District permit lots of even less than the baseline one-acre requirement if the lot averaging provisions are applied. The minimum side yard setback is 25 feet and the rear yard setback is 45 feet.[8]

Applying common experience and given the nature of the property, its neighborhood, and the requirements of the zoning district, it is quite apparent that the supervisors cannot have contemplated nor that any reasonable person could conclude, that as many as twenty-one dogs could be considered customarily incidental to this residence.[9]

Accordingly, we affirm.

### ORDER

AND NOW, this 15th day of July, 2009, the order of the Court of Common Pleas of Chester County in the above captioned matter is hereby AFFIRMED.

---

8. By contrast, in the commercial district, keeping more than four dogs requires a lot size of at least two acres and setbacks of at least 100 feet. To a significant extent the impact on the land and the adjoining property owners is similar whether the animals are kept in a commercial kennel or on a residential lot.

9. We limit our ruling here to the question of whether the twenty-one dogs Appellants sought to keep are permitted as an accessory use. It is neither necessary nor appropriate that we determine a precise limit on the number of dogs that may be kept as an accessory use in this district, let alone another district, nor what the limits might be for, say, a large farm or a cluster of townhouses.