Jay D. ALDRIDGE and Patricia Aldridge, husband and wife; Graham Standish and Diane Standish, husband and wife; Dan Pikur and Robin Pikur, husband and wife; and James A. Mason, Appellants

v.

JACKSON TOWNSHIP, Jackson Township Board of Supervisors, Jrad Ventures, LLC, a Pennsylvania limited liability company.

Commonwealth Court of Pennsylvania.

Argued Oct. 13, 2009.

Decided Nov. 16, 2009.

Thomas H. Ayoob, III, Pittsburgh, for appellants.

Timothy J. Bish, Pittsburgh, for appellee, Jackson Township.

Maureen E. Sweeney, Pittsburgh, for appellee, Jrad Ventures, LLC.

BEFORE: SIMPSON, Judge, FRIEDMAN, Senior Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

In this land use appeal, Objectors[1] ask whether the Jackson Township Board of Supervisors (Supervisors) erred in granting JRAD Ventures, Inc.'s (Applicant) conditional use application. The Supervisors determined Applicant's proposed indoor shooting range qualified as a "recreation facility" as defined by the Jackson Township Zoning Ordinance (zoning ordinance). The Supervisors also determined Applicant's proposed retail gun and supply store, club room, gunsmith and classrooms and training rooms, which would be developed in connection with the proposed indoor shooting range, were permissible, ac-

---

1. Objectors are Jay D. Aldridge and Patricia Aldridge, Graham Standish and Diane Standish, Dan Pikur and Robin Pikur and James A. Mason.

cessory uses. Discerning no error in the Supervisors' decision, we affirm.

In July 2005, Applicant entered into an agreement to purchase property near the intersection of Steeb Road and Zehner School Road in the Township (subject property). The subject property lies within the Township's RA Rural Agricultural District.

About a month later, Applicant submitted an application for conditional use approval to the Township for an "indoor shooting range with ancillary uses (class and training rooms, shooting supplies and gun sales)." Supervisors' Op. at 1.

The zoning ordinance permits a "recreation facility" in the RA District by conditional use. *See* Section 27–603(D) of the zoning ordinance. In turn, Section 27–302 defines a "recreation facility" as "an establishment offering recreation, sports, games of chance, skill or leisure time activities to the general public or private membership for a fee or charge." Of further note, Section 27–302 defines an accessory use as "a use on the same lot with, and of a nature customarily incidental and subordinate to the principal use."

Shortly after Applicant filed its conditional use application, the Township Planning Commission reviewed the application and recommended approval subject to several conditions. Hearings ensued before the Supervisors.

In June 2006, the Supervisors issued an opinion in which they granted Applicant's conditional use request subject to numerous detailed conditions. The Supervisors findings may be summarized as follows.

The subject property is comprised of 2.30 acres [2] and is currently used for agriculture and/or agriculture-related purposes. The subject property is located in a rural area characterized by agricultural operations and is sparsely populated by single-family dwellings.

The conceptual plan for Applicant's proposed development consists of an approximate 18,260–square foot, two-story structure. The lower level of the structure would be located partially below grade and would house a 14–lane indoor firearm shooting range along with a check-in area, restrooms and a storage area. The shooting range would measure 25 meters in depth. The upper level would house a retail sales area, club room, restrooms, classrooms, gunsmith area, offices and storage areas. [3]

The retail sale of goods at the proposed facility would be limited to those types of goods used within the facility for the proposed shooting range. Clothing would not be sold from the proposed facility, and any food and beverages would be sold from vending machines.

Firearms used in the indoor shooting range would be limited to rim fire and regular center cartridge firearms. No outside ammunition would be brought into the facility nor used in the shooting range. The club room area would be used for cleaning and storing firearms by customers that purchase a membership.

The gunsmith area would be used for the cleaning and repair of firearms, which would be performed by an individual employed by Applicant. The classroom would be used for firearm-related training and

---

**2.** The Supervisors noted other documents inaccurately indicate the subject property is 2.57 acres in size.

**3.** The Supervisors also found Applicant's proposed development contemplated "an ambig-

uous and undefined light storage area"; however, the Supervisors found, Applicant did not present satisfactory evidence on the use of this area. Supervisors' Op., Findings of Fact (F.F.) Nos. 15(d), (k).

instruction of up to seven individuals at a time.

The design of the proposed building and interior improvements would result in a noise level of, at most, approximately 35 to 40 dB(A) outside the building. The initial operating hours of the facility would be 12:00 p.m. to 9:00 p.m. The proposed facility would have no outside activities other than off-street parking. The outdoor entrance to the proposed facility would have a secured, ballistic proof, vestibule area with a firearm unloading station where customers would be required to unload any firearms before entering the facility. The proposed facility is anticipated to generate 120 daily vehicular trips and 25 peak hour trips, which is equivalent to the traffic generated by 10 single-family homes.

The Township has several existing outdoor shooting ranges in the RA District, including the Evans City Sportsmen's Club, Conway Sportsmen's Club and Breakneck Beagle Club. The Supervisors found an indoor shooting range similar to that proposed by Applicant is more conducive to the rural residential area in which the subject property is located than an outdoor shooting range.[4]

As to their interpretation of the zoning ordinance, the Supervisors concluded Applicant's proposed facility qualified as a "recreation facility." The Supervisors pointed out the zoning ordinance's definition and regulations for recreation facilities do not distinguish between commercial and noncommercial facilities; thus, the fact that Applicant's facility is commercial in nature does not disqualify it as a recreation facility.

The Supervisors stated the objections and testimony presented by Objectors related to the commercial nature of the proposed facility and, through their objections, Objectors actually sought an amendment to the zoning ordinance prohibiting commercial facilities from being located in residential zoning districts. The Supervisors noted such an amendment was beyond the scope of the proceedings.[5]

The Supervisors further determined Applicant's proposed accessory uses are, in fact, permitted accessory uses because they are customarily incidental and subordinate to an indoor shooting range. Specifically, the Supervisors identified the following uses as accessory: retail sale of goods specifically used within the proposed building for the principal recreation facility use; firearm repair and cleaning (gunsmith); firearm-related training classes; and, storage related to these accessory uses.

The Supervisors also determined that, subject to the imposition of certain conditions, Applicant's proposed facility satisfied both the zoning ordinance's general criteria for conditional uses and the specific conditional use criteria for recreation facil-

---

**4.** The Supervisors further found safety is a significant issue for a facility such as that proposed by Applicant, which involves the use, storage, sale and handling of firearms. The proposed facility must provide proper and adequate safety precautions and training to protect its customers, employees and residents of the surrounding area. The Supervisors stated, if designed and operated in a proper and appropriate manner consistent with the conditions imposed pursuant to the grant of the conditional use, the proposed development would handle these security issues.

**5.** The Supervisors specifically rejected the testimony and documents presented by Objectors' witness Sebastian Rucci, a real estate developer and attorney, on the grounds his testimony and supporting documents contained material errors, deficiencies and misinformation, and Rucci lacked the proper qualifications.

ities. The Supervisors further found Objectors did not satisfy their burden of showing a high probability of adverse impacts generated by the proposed facility.

Based on these determinations, the Supervisors granted Applicant's conditional use request subject to 27 detailed conditions. Of particular import here, one condition stated the approval of Applicant's conditional use application automatically expires upon: "[T]he [Applicant's] failure to apply for and obtain a building permit and commence construction within one (1) year after the date of the [Supervisors'] written decision." Supervisors' Op. at 13, Condition 5(a).

Objectors appealed to the Court of Common Pleas of Butler County (trial court). Additionally, Applicant filed an appeal challenging a number of the attached conditions. The trial court consolidated the appeals. Approximately two years after filing its appeal, however, Applicant discontinued its appeal (while Objectors' appeal was still pending).

Without taking additional evidence, the trial court issued an opinion and order affirming the Supervisors' decision. This appeal by Objectors followed.

■ On appeal,[6] Objectors argue the Supervisors erred in determining Applicant's proposed indoor shooting range with a retail gun and supplies store, a club room, a gunsmith, and classrooms and training rooms is a permitted "recreation facility" conditional use under the zoning ordinance. Alternatively, Objectors contend the trial court erred in determining Applicant's conditional use approval did not expire pursuant to condition 5(a) of the Supervisors' decision. The Supervisors join in this latter argument.

## I. Conditional Use Approval

Objectors first challenge approval of a commercial indoor shooting range with a retail gun and supply store, a club room, a gunsmith, and class and training rooms as a conditional use within the recreation facility category. Objectors assert that although a shooting range which is used solely for recreation or leisure may fall within the definition of a recreation facility, Applicant's proposal is actually something quite different. Objectors maintain Applicant's proposed use is more aptly characterized as a commercial retail use, which is not permitted, rather than a recreation facility.

In addition, Objectors assert that while Applicant seeks to operate several accessory uses together with its recreation facility, the zoning ordinance does not permit uses that are accessory *to conditional uses.* Rather, the zoning ordinance specifically limits accessory uses to those that are customarily incidental to a *permitted principal use.* Given the clear language of the zoning ordinance, Objectors maintain that accessory uses are only allowed for *permitted principal uses* (uses permitted by right) and no accessory uses are permitted for conditional uses. As such, Objectors argue we should reject Applicant's assertion that its proposed retail gun and supply store, club room, gunsmith and classrooms and training rooms are all allowable accessory uses to a recreation facility. In support of this construction of the zoning ordinance, Objectors point to our decision in *Bene v. Zoning Hearing Board of Windsor Township,* 121 Pa. Cmwlth. 380, 550 A.2d 876 (1988).

Objectors also contend that in light of all its proposed ancillary uses, Applicant did

6. Where, as here, the trial court did not take additional evidence, our review is limited to determining whether the Supervisors abused their discretion or committed an error of law. *Residents Against Matrix v. L. Makefield Twp.,* 845 A.2d 908 (Pa.Cmwlth.2004).

not establish its proposed use is a recreation facility. Objectors argue that by including these "accessory uses," none of which are permitted in the RA district, Applicant altered the nature of its principal use, and this altered use does not fall within the definition of a recreation facility. Rather, the proposed use is more aptly characterized as a commercial retail use, particularly in light of the zoning ordinance's definition of "commercial." *See* Section 27–302 of the zoning ordinance (defining "commercial" as "engaging in a business, enterprise, activity, or other undertaking for profit.") Objectors argue Applicant's proposed use does not fall within the recreation facility category unless all the proposed "accessory uses" are removed.

■ We begin by recognizing that a conditional use is one specifically recognized by the legislature as consistent with the zoning plan. *Bailey v. U. Southampton Twp.,* 690 A.2d 1324 (Pa.Cmwlth.1997). As such, it is presumed the particular type of use does not, of itself, adversely affect public interest. *Id.*

■ In addressing an application for a conditional use,[7] a local governing body must employ a shifting burden of persuasion. *Sheetz, Inc. v. Phoenixville Borough Council,* 804 A.2d 113 (Pa.Cmwlth.2002). First, the applicant must persuade the local governing body its proposed use is a type permitted by conditional use and the proposed use complies with the requirements in the ordinance for such a conditional use. *In re McGlynn,* 974 A.2d 525 (Pa.Cmwlth.2009). Once it does so, a presumption arises the proposed use is consistent with the general welfare. *H.E. Rohrer, Inc. v. Zoning Hearing Bd. of Jackson Twp.,* 808 A.2d 1014 (Pa.Cmwlth.2002). The burden then shifts to objectors to rebut the presumption by proving, to a high degree of probability, the proposed use will adversely affect the public welfare in a way not normally expected from the type of use. *Id.*

■ The issue of whether a proposed use falls within a given categorization contained in a zoning ordinance is a question of law for this Court. *Id.* In considering this issue, we are mindful that ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of its land. *Id.* Thus, "restrictions on a property owner's right to free use of his property must be strictly construed and all doubts resolved in his favor." *Appeal of Gilden,* 406 Pa. 484, 492, 178 A.2d 562, 566 (1962).

■ Like statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. *See Adams Outdoor Adver., L.P. v. Zoning Hearing Bd. of Smithfield Twp.,* 909 A.2d 469 (Pa. Cmwlth.2006), *appeal denied,* 592 Pa. 768, 923 A.2d 1175 (2007). Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921; *see also* 1 Pa.C.S. § 1903 (words and phrases in a statute shall be construed in accordance with their common and accepted usage). An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested. *New Castle County v. Hartford Accident & Indem. Co.,* 970 F.2d 1267 (3d Cir.1992).

---

7. Because the law regarding conditional uses and special exceptions is virtually identical, the burden of proof standards are the same for both. *Sheetz, Inc. v. Phoenixville Borough Council,* 804 A.2d 113 (Pa.Cmwlth.2002).

■ Further, a board of supervisors is entitled to considerable deference in interpreting its zoning ordinance. *Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*, 840 A.2d 484 (Pa.Cmwlth.2004).

## A. "Recreation facility"

■ Here, the Supervisors determined Applicant's proposed use satisfied the zoning ordinance's "recreation facility" definition, and, therefore it was permitted as a conditional use in the RA District. As indicated above, Section 27–302 of the zoning ordinance defines a "recreation facility" as "an establishment offering recreation, sports, games of chance, skill or leisure time activities to the general public or private membership for a fee or charge." *Id.* (emphasis added). Based on the plain language of this definition, we discern no error in the Supervisors' determination that Applicant's proposed indoor shooting range qualifies as a "recreation facility."

Moreover, whether the shooting range may also be considered a commercial enterprise because it charges a fee does not remove it from the definition. To the contrary, the definition clearly states a recreation facility may assess a "fee or charge" for membership and may offer its services to members of the general public. Section 27–302 of the zoning ordinance.

Further, Objectors do not assert Applicant failed to prove its proposed use satisfies the zoning ordinance's general conditional use criteria or the specific conditional use criteria for a recreational facility. In addition, the Supervisors determined Objectors did not prove the proposed use would adversely affect the public welfare in a way not normally expected from the type of use. Objectors do not challenge this determination.

## B. "Recreation facility" vs. "Commercial"

Nevertheless, Objectors maintain Applicant's proposed use is more aptly classified as a "commercial" use, which is not permitted in the RA District, than a "recreation facility," which is permitted by conditional use. As explained above, no error is apparent in the Supervisors' decision to classify Applicant's proposed indoor shooting range as a "recreation facility" based on the plain language of the zoning ordinance's definition of that term.

Additionally, even if the proposed indoor shooting range arguably qualifies as a "commercial" use, no error is apparent in the Supervisors' decision because their interpretation favors Applicant and permits the broadest possible use of the subject property. *See H.E. Rohrer* (where proposed use falls within two classifications, zoning hearing board should opt for classification that permits broadest use of the land).

Further, *Bryson v. Oxford Motorcycle Club, Inc.*, 16 Pa.Cmwlth. 229, 327 A.2d 880 (1974), relied on by Objectors as instructive on the issue of whether a use is properly considered recreational or commercial for zoning purposes, is clearly distinguishable. There, an applicant whose stated purpose was to promote the recreational activity of motorcycle riding sought a use and occupancy permit to construct a proposed motorcross operation. To obtain the permit, the entity had to prove it qualified under one of two categories pursuant to the local zoning ordinance: (i) "[c]lub, fraternal institution or nonprofit swimming pool provided that a particular activity shall not be one which is customarily carried on as a business and *provided that all services shall be for members and their guests* [ ]"; or (ii) a "*[n]on-commercial* recreational use." *Id.* at 881 (emphasis added). The zoning hearing board denied

the permit because the evidence showed the services offered by the motorcycle club were not restricted to "members and their guests," and the proposed activities did not fall within the "non-commercial recreational use" category. This Court affirmed the zoning board's determination, concluding the record revealed the club would allow access to any member of the public and, therefore, would not be limited to "members and their guests." In addition, we agreed with the board that the club could not be considered a "non-commercial recreational facility," stating:

> The testimony shows at least four events and possibly seven a year which appear to be the principal use of the property and which, for all practical purposes, are not only open to the public, but the attendance of the public is solicited. All entrants pay an entry fee and all spectators, numbering literally in the thousands, are asked to "donate" a dollar. The testimony of [the applicant] reveals that tickets are issued to those donating, so that a record of the number present may be kept. Surely, this means that all, or substantially all, who attend donate....

*Id.* at 882 (footnote omitted).

*Bryson* does not compel the result sought by Objectors here. More particularly, the critical distinction between this case and *Bryson* is that here the zoning ordinance's "recreation facility" definition is not limited to "non-commercial" recreational activities or restricted to entities offering services only to "members and their guests." To the contrary, the "recreation facility" classification at issue here is significantly broader in that it allows for an establishment that offers recreation "to the general public or private membership for a fee or charge." Section 27–302 of the zoning ordinance. As such, *Bryson* is distinguishable.

## C. Accessory Uses

As to whether the Supervisors properly determined Applicant's proposed ancillary uses (i.e., the retail gun and supply store, club room, gunsmith and classrooms and training rooms) qualify as "accessory uses" under the zoning ordinance, Section 27–302 defines an accessory use as "a use on the same lot with, and of a nature customarily incidental and subordinate to the principal use."

 Recently, in *Hess v. Warwick Township Zoning Hearing Board,* 977 A.2d 1216 (Pa.Cmwlth.2009), this Court re-examined the meaning of the phrase "customarily incidental" as commonly used in zoning ordinance definitions of the term "accessory use." Speaking through President Judge Leadbetter, we explained:

> The term "customarily incidental" can neither be ignored as meaningless nor can it be subjected to proof in each case by some standard quantum of empirical evidence that has not been and probably can not be articulated. The proper application of "customarily incidental" in any particular case must respect the need for an understandable legal standard and yet allow for the flexibility necessary to the term's reasonable application in a variety of circumstances....
>
> "Customarily incidental" is best understood as invoking an objective reasonable person standard. Under this standard, we may look not only at how frequently the proposed accessory use is found in association with the primary use (if such evidence is available, it certainly is relevant) but also at the applicant's particular circumstances, the zoning ordinance and the indications therein as to the governing body's intent regarding the intensity of land use appropriate to the particular district, as well as the surrounding land conditions and

any other relevant information, including general experience and common understanding, to reach a legal conclusion as to whether a reasonable person could consider the use in question to be customarily incidental. This approach respects the need for an understandable legal standard and the flexibility that is a necessary component of the analysis. . . .

*Id.* at 1224.

■ Here, the Supervisors determined Applicant's proposed retail gun and supply store, club room, gunsmith and class and training rooms qualify as accessory uses to Applicant's principal indoor shooting range use. Applying the standard recently espoused in *Hess*, we discern no error in the Supervisors' determination that the proposed associated uses are, in fact, "customarily incidental" to Applicant's primary indoor shooting range use.

Specifically, with regard to the nature of the subject property and the locality, the Supervisors found the subject property is comprised of 2.3 acres, and the surrounding area is rural, consisting of agricultural operations and sparsely populated single-family dwellings. The Supervisors also found the Township has several existing *outdoor* shooting ranges in the RA District, including the Evans City Sportsmen's Club, Conway Sportsmen's Club and Breakneck Beagle Club. The Supervisors found an indoor shooting range similar to that proposed by Applicant is more conducive to the rural residential area where the subject property is located as opposed to an outdoor shooting range.

Also, as to the regulations applicable in the RA District, the district is comprised of those areas of the Township that are predominantly agricultural. The zoning ordinance mandates a two-acre minimum lot size in the RA District. *See* Sections 27–601; 27–604 of the zoning ordinance.

Of further note, based on Applicant's proposal, the Supervisors attached a *condition* limiting the area for the proposed accessory uses to 25% of the gross floor area of the facility. Applicant's representative testified the proposed retail area would occupy 12%; the proposed gunsmith would occupy 3%; the proposed class and training rooms would occupy 2%; and, the proposed club room would occupy 6%. R.R. at 465a–66a.

In addition, Applicant's representative testified he visited several other indoor shooting ranges, and all of these ranges also had a retail component. R.R. at 515a–516a. He compared Applicant's proposed indoor shooting range and accessory uses to a bowling alley that also sells bowling balls and shoes, or a golf course that also has a lounge or pro shop. R.R. at 516a. He also stated that, of the indoor shooting ranges he visited, two were located in areas that had nearby residences. R.R. at 516a–17a. Applicant also presented testimony by a witness who designed and built over 100 indoor shooting ranges. This witness explained he had not seen a recreational indoor shooting range that did not have, among other things, a retail component that sold ammunition and guns. R.R. at 575a–77a. Similar testimony was presented by another witness who had extensive experience with firearms and firearm training. R.R. at 598a–99a.

Based on common experience, and given the nature of the subject property, its surrounding area, and the requirements of the RA District, we discern no error in the Supervisors' determination that the proposed retail gun and supply store, club room, gunsmith and class and training rooms are customarily incidental to Applicant's principal indoor shooting range use.

### D. Permitted Use

We must next consider whether accessory uses are allowed in connection with

conditional uses or whether accessory uses are only allowed in conjunction with uses permitted by right.

As noted above, the zoning ordinance defines an accessory use as "a use on the same lot with, and of a nature customarily incidental and subordinate to the principal use." Section 27–302 of the zoning ordinance. The zoning ordinance defines a "principal use" as "the main use of land or structures as distinguished from a subordinate or an accessory use." *Id.* Also, the zoning ordinance defines the term "conditional use" as "a use which permitted in a particular zoning district ... may be suitable in certain locations only when express standards and criteria are prescribed for such uses, as provided for in this [zoning ordinance] and approved by the [Supervisors]." Section 27–302 of the zoning ordinance. In addition, the zoning ordinance defines the term "use" as "the specific purpose for which land or a building is designed, arranged, intended or for which it is or may be occupied or maintained. The term 'permitted use' or its equivalent shall not be deemed to include any nonconforming uses." *Id.*

In addition, the regulations that govern the RA District state:

### § 27–602. Permitted Uses.

1. **Principal Uses**

 A. Agricultural operations ... on parcels of 10 acres or more....

 B. Forestry....

 C. Township facilities.

 D. Publicly owned parks and playgrounds.

 E. Single family detached dwellings.

2. **Accessory Uses**

 A. No-impact home-based businesses....

 B. Other accessory uses customarily incidental to a permitted principal use.

 C. Private garages and parking areas....

 D. Signs....

 E. Communications antennae and communications buildings....

### § 27–603. Conditional Uses.

1. A lot or parcel may be used, and buildings or structures may be erected and used for any of the following purposes, subject to the approval of a conditional use application, as specified in Part 16 of this Chapter.

 A. Agricultural uses conducted on plots of land less than 10 acres in size....

 B. Cemetery.

 C. Mineral extraction.

 D. Recreation facility.

Sections 27–602, 27–603 of the zoning ordinance (citations omitted).

■ Reading the RA District regulations together with the definition of an "accessory use," yields two possible interpretations: accessory uses are allowed only if the principal use is a *permitted* use;[8] or, accessory uses are allowed *regardless* of whether the principal use is a permitted use or is allowed by conditional use.

■ Here, the Supervisors opted for the latter interpretation and determined Applicant's proposed accessory uses were permitted in connection with its "recreation facility" conditional use. Given the deference that must be afforded the Su-

---

8. "In technical zoning jargon, a permitted use refers to a use which is allowed absolutely and unconditionally." *Bene v. Zoning Hearing Bd. of Windsor,* 121 Pa.Cmwlth. 380, 550 A.2d 876, 880 n. 6 (1988); *see also Lex v. Zoning Hearing Bd. of Hampton Twp.,* 725 A.2d 236 (Pa.Cmwlth.1999).

pervisors' interpretation of the zoning ordinance, *Caln Nether,* and the fact the zoning ordinance is to be construed expansively, affording Applicant the broadest possible use and enjoyment of its land, *H.E. Rohrer,* we cannot say the Supervisors erred in their determination. Moreover, the Supervisors' construction is consistent with the zoning ordinance, which only excludes nonconforming uses, not conditional uses, from the term "permitted uses." Section 27–302 of the zoning ordinance. The Supervisors' interpretation is "also in accord with case law which provides that a use allowed by special exception is a 'permitted use.' " *Smith v. Zoning Hearing Bd. of Huntingdon Borough,* 734 A.2d 55, 59 (Pa.Cmwlth.1999) (citing *Kulak v. Zoning Hearing Bd. of Bristol Twp.,* 128 Pa.Cmwlth. 457, 563 A.2d 978 (1989)). For these reasons, no error is apparent in the Supervisors' construction of the zoning ordinance in a manner which permits accessory uses in connection with conditional uses.

Additional support for this conclusion is found in our decision in *Bene.* There, the applicant sought to construct a car wash as an accessory use to its gas station, which was permitted by special exception. The zoning hearing board approved the car wash as an accessory use, and the trial court upheld this determination. Before this Court, the objectors asserted the zoning board erred in determining the car wash itself did not have to qualify as a special exception. Specifically, they argued, "because the gas station, as the primary use of the property, was required to qualify as a special exception under the [o]rdinance, the car wash, as an accessory use, [could not] achieve a greater level of permissibility." *Id.* at 879. Rejecting this argument, we explained:

> Article V, section 501 of the [o]rdinance provides that a gasoline station is a use allowed only by special exception

in a commercial district. However, the [o]rdinance includes accessory buildings and uses in its list of *permitted* uses in a commercial district. The table of uses in the [o]rdinance is subject to two possible interpretations: (1) accessory uses are permitted uses *only* if the primary use is also a permitted use or (2) accessory uses are permitted uses *regardless* of whether the primary use is a permitted use or is allowed only by special exception or as a conditional use.

> The [zoning board] in this case chose the latter interpretation and determined that the car wash was a permitted use as of right and need not qualify as a special exception. We find no error in this conclusion. This court has held that when interpreting a zoning ordinance governing permitted uses, we must give the landowner the benefit of the interpretation which is least restrictive of his use and enjoyment of the property.

*Id.* at 880 (footnotes and citation omitted) (emphasis in original).

Based on our holding in *Bene,* no error is apparent in the Supervisors decision to approve Applicant's proposed accessory uses in connection with its "recreation facility" use.

### E. Consistency with Comprehensive Plan

■ As a final point, Objectors contend Applicant's proposed use is inconsistent with the Township's Comprehensive Plan because that document indicates that in the Township's rural areas *non-commercial* recreational areas are contemplated.

Contrary to Objectors' assertions, this Court resists attempts by local governing bodies to deny conditional use applications on the grounds a proposed conditional use is inconsistent with a municipality's comprehensive plan. For example, in *In re*

*Cutler Group, Inc.,* 880 A.2d 39 (Pa. Cmwlth.2005), we stated:

> [The applicable section of the zoning ordinance] states that the size, scope, extent and character of a conditional use must be consistent with the spirit, purposes and intent of the [t]ownship's [c]omprehensive [p]lan. The [b]oard found that [the applicant's] proposed development was not consistent with the spirit, purposes and intent of the [c]omprehensive [p]lan because [the applicant's] proposed development does not support the preservation of agricultural uses. . . . *However, as a matter of law, where a zoning ordinance allows a conditional use, there is legislative acceptance that the use is consistent with the zoning plan.* [*Northampton Area Sch. Dist. v. E. Allen Twp. Bd. of Supervisors,* 824 A.2d 372 (Pa.Cmwlth.), *appeal denied,* 575 Pa. 689, 834 A.2d 1144 (2003); *In re Saunders,* 161 Pa.Cmwlth. 392, 636 A.2d 1308 (1994); Ryan, 1 *Pennsylvania Zoning Law and Practice* § 5.1.5 (2003) ].

Here, the [t]ownship's [o]rdinance allows development under the Open Space Design Option as a conditional use in the AG and RC districts. The Open Space Design Option requires preservation of 65% of a property's open space, *not* preservation of 100% of the open space. *See* section 903(A) of the Ordinance. Thus, there is legislative acceptance that preservation of 65% of a property's open space in the AG and RC districts is consistent with the spirit, purposes and intent of the [t]ownship's [c]omprehensive [p]lan. Because [the applicant] proposes preservation of 65% of its property's open space, *the [b]oard erred in denying [the applicant's] application for a conditional use based on inconsistency with the [c]omprehensive [p]lan.*

*Id.* at 45 (emphasis added).[9]

Based on this authority, Applicant was not required to prove consistency with the spirit, intent, or aspirational goals of the Comprehensive Plan. Objectors do not dispute Applicant's proposal satisfied the specific, objective conditional use criteria set forth in the zoning ordinance. Therefore, we reject Objectors' requests to overturn the grant of Applicant's conditional use request based on a purported inconsistency with the Comprehensive Plan.

---

9. Similarly, in *41 Valley Associates v. Board of Supervisors of London Grove Township,* 882 A.2d 5 (Pa.Cmwlth.2005), we considered whether a proposed agricultural security area (ASA) met the requirement of the Agricultural Area Security Law (AASL), Act of June 30, 1981, P.L. 128, *as amended,* 3 P.S. §§ 901–915, that the use of land proposed for inclusion in an ASA "shall be compatible with local government unit comprehensive plans." Section 7 of the AASL, 3 P.S. § 907(a)(2). We concluded that this language

> address[es] whether the proposed land is viable agricultural land from a legal viewpoint. Agricultural uses should be consistent with present zoning. *In addition, agricultural uses should be consistent with future zoning, as best estimated in the comprehensive plan.*

*41 Valley Assocs.,* 882 A.2d at 14 (emphasis added). Applying this interpretation of the statutory language, we looked at the map of future uses for the property. Ultimately, we concluded the governing body erred when it departed from analyzing discrete and objective criteria relating to the current and future zoning for the property and focused instead on the goals of the comprehensive plan. *Id.*

A review of the Township's Comprehensive Plan here reveals the subject property is currently zoned Rural Residential/Agricultural, which permits recreation facilities by conditional use. R.R. at 328a. Also, the future use of the subject property mapped in the comprehensive plan is Rural Residential. R.R. at 321a–22a, 335a. As in *41 Valley Associates,* the Township's Comprehensive Plan does not contemplate a change in future zoning in the region of the subject property. This is sufficient to demonstrate consistency with the comprehensive plan.

## II. Expiration of Conditional Use Approval

Objectors next point out the Supervisors' decision to approve Applicant's conditional use application included a condition that the approval automatically expires upon: "[T]he [Applicant's] failure to apply for and obtain a building permit and commence construction within one (1) year after the date of the [Supervisors'] written decision." Supervisors' Op. at 13, Condition 5(a). Objectors assert Applicant did not obtain a building permit or commence construction of its proposed use within one year after the date of the written decision (which was issued on June 14, 2006). Thus, Objectors and Supervisors argue that the conditional use approval expired by its very terms.

■■■ Where, as here, the trial court does not receive additional evidence, our review is limited to determining whether *the Supervisors* abused their discretion or committed an error of law. *Residents Against Matrix v. L. Makefield Twp.*, 845 A.2d 908 (Pa.Cmwlth.2004). While the parties' arguments on this issue focus on the trial court's decision, this Court reviews *the Supervisors' decision* to determine whether they committed an error of law and whether their necessary findings are supported by substantial evidence. *See 41 Valley Assocs. v. Bd. of Supervisors of London Grove Twp.*, 882 A.2d 5 (Pa. Cmwlth.2005).

■■■ Here, the issue of whether Applicant's conditional use approval expired was not (and could not have been) raised before the Supervisors, who were the fact-finders. Rather, this issue was first raised before the trial court, which acted solely in its appellate capacity.

The obvious difficulty is that the issue of lapse raises factual questions, but there is no record on which to resolve the questions. For example, as conditions imposed pursuant to the grant of Applicant's conditional use application, the Supervisors required Applicant to obtain subdivision approval as well as various federal and state firearms and shooting range approvals. *See* Supervisors' Op. at 12–13, Conditions 21(1)(a), (e), 21(3), (4). However, it is impossible to tell whether applications were made, the current status of any applications, and whether it appears likely that Applicant can ultimately succeed with those applications. It is also impossible to tell what impact these other required approvals had on the ability of Applicant to seek a building permit and commence its use. In light of these and other practical issues that could arise, the failure to submit this issue to a fact-finder is problematic. Further, Objectors or the Supervisors could have sought to present additional evidence on this issue, but neither party did so.

Because Supervisors required Applicant to secure other approvals before it could commence its proposed use, we recognize a recent trend in land use decisions which address approvals with conditions. *See, e.g., Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh*, 589 Pa. 71, 907 A.2d 494 (2006) (grant of special exception with conditions where applicant demonstrated willingness and ability to satisfy conditions and where it was reasonable that approval precede formal execution of binding contract for off-site parking); *Kohr v. L. Windsor Twp. Bd. of Supervisors*, 910 A.2d 152 (Pa.Cmwlth.2006) ("agreement to agree" between developer and sewer service provider to operate sewage facility plant to serve proposed development sufficient to obtain preliminary plan approval conditioned on parties securing all necessary permits before final approval). This line of cases encourages consideration of business realities and the delays which may arise from multiple reg-

ulatory reviews beyond the control of an applicant.

In short, because the possible lapse of Applicant's conditional use approval raises factual questions, because no party presented evidence on this issue to a factfinder, and because no facts were found, this issue is not ripe for review. Concomitantly, it was unnecessary for the trial court to address this issue. In fairness to the trial court, it accepted the parties' invitation to discuss the issue. Its willingness to do so, however, was harmless.

For the foregoing reasons, we conclude the trial court properly dismissed Objectors' appeal of the Supervisors' decision granting Applicant's conditional use application. Also, we conclude the trial court was not required to decide the issue of whether Applicant's conditional use approval expired as that matter was not ripe for review.

Senior Judge FRIEDMAN concurs in the result only.

### ORDER

**AND NOW,** this 16th day of November, 2009, the order of the Court of Common Pleas of Butler County is **AFFIRMED.**