IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neal L. Hufford, Edward Young, :
and Kozette Young :
:
v. : No. 1973 C.D. 2014
: Submitted: July 17, 2015
East Cocalico Township Zoning :
Hearing Board :
:
Appeal of: Neal L. Hufford :


BEFORE: HONORABLE DAN PELLEGRINI, President Judge
HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI                    FILED: August 5, 2015


        Neal L. Hufford (Objector) appeals the order of the Lancaster County Court of Common Pleas (trial court) dismissing his appeal and affirming the decision of the East Cocalico Township (Township) Zoning Hearing Board (Board) affirming the issuance of Building Permit No. 13-009 (Permit) to Anthony Jenkins (Landowner) for the construction of a detached garage. We affirm.

        Landowner owns a 1.61-acre lot in the Township's Agricultural Zoning District that is improved with a single-family detached residential dwelling with an attached two-car garage and a separate 12' by 24' storage shed. In January 2013, Landowner filed an application for a building permit to construct a 40' by

40' detached pole barn with a concrete floor on the property to be used as a garage.[1] In September 2013, Anthony Luongo (Luongo), the Township's Zoning Officer, issued the Permit to Landowner and Objector appealed to the Board.[2]

Luongo testified at the Board's December 2013 hearing that Landowner sought the Permit to construct the 40' by 40' single-floor garage with an actual building size of 36' by 40' and two 10' by 10' carriage type overhead doors, and that he intended to use it for the private storage of his multiple classic cars that he had paid over the years to store off site at different storage facilities. He stated that Landowner had previously sought to install a garage to store his

---

[1] The use of the property as a single-family detached residential dwelling is a permitted use in the Agricultural Zoning District under Section 220-12.B.(7) of the Township's zoning ordinance. (Reproduced Record (RR) at 31.) Section 220-11 of the Township's zoning ordinance defines "accessory use" as "[a] use customarily incidental and subordinate to the principal use or building and located on the same lot as the principal use or building." (RR at 27.) That section also defines "structure, accessory" as "[a] structure associated with an accessory use (e.g., swimming pools, patios, antennas, tennis courts, *garages*, utility sheds, etc.)…." (*Id.* at 28) (emphasis added). In turn, that section defines "garage, private" as:

> An accessory building for the storage of one or more automobiles and/or other vehicles accessory and incidental to the primary use of the premises; provided, however, that one commercial vehicle not exceeding a gross vehicle weight of 11,000 pounds may be stored therein where the use of such vehicle is not incidental to the use of the premises. No business, occupation or service shall be conducted therein, nor shall space there for more than one vehicle be leased to a nonoccupant of the premises….

(*Id.* at 29.)

[2] Two other adjoining landowners, Edward and Kozette Young, appealed the Permit's issuance before the Board and the two appeals were consolidated for disposition. The Youngs also participated in the appeal to the trial court, but they are not participating in this appeal.

2

classic cars on another property, but was told that it was located in a flood zone and that no permit could be issued. Landowner then purchased the instant property. He testified that Landowner never indicated that space in the garage would be leased to other car owners or that commercial vehicles would be stored there; that Landowner's primary occupation is as a contractor; that he did not know if Landowner would repair or maintain the vehicles in the garage; and that he did not know if Landowner races cars. He stated that while he did not know how many cars that a structure of this size would hold, he stated that a standard parking space for a car in the zoning ordinance is 9' by 18' and that "We can do the math." He testified that he was aware of the size of the proposed overhead doors and that that door size was not unusual in the Agricultural Zoning District, and that there is not any maximum or standard garage door sizes in the zoning ordinance.

Luongo also testified that the structure would be within the setback and impervious surface requirements of the zoning ordinance, that the garage would contain a concrete floor, and that there would be no electric, water or sewage service to the garage. He explained that the Township's zoning ordinance does not restrict the size of an accessory building, that there is no restriction on the storage of classic cars, and that there are no standard requirements regarding the amount of traffic coming and going from an accessory building. He also identified photographs depicting three neighboring properties that have large accessory structures, including those of Objector, who has a detached two-story library/office; the Youngs, who have both an attached two-car garage and a detached two-car garage; and another neighboring property with a detached garage with four garage doors, three of which are over 10' high and which houses multiple

vehicles in that accessory structure. He also stated that many people in the Township have an R.V. and some store them indoors requiring a door larger than 10 feet. He concluded that Landowner's proposed garage is a permitted accessory use and structure under the zoning ordinance.[3]

At the conclusion of the hearing, the Board upheld the Zoning Officer's decision to issue the Permit to construct the garage as "an accessory structure to a dwelling unit that is the principal use of the property in the agricultural zone." (RR at 107-108.) In its written decision, the Board found the Zoning Officer's testimony to be "credible, confident and unshaken." (Board 1/8/14 Decision at 6.) The Board noted the Zoning Officer's testimony that it is not uncommon in the Agricultural Zoning District to have accessory structures, including garages, with doors large enough to garage vehicles larger than cars and that "[a]s long as the garage was private and not for the rental of garage space to car owners who resided elsewhere or associated with some commercial endeavor, it would be considered an accessory use and structure and not a second primary use and structure." (*Id.*) The Board also noted that "[h]ere, the size of the proposed structure is 1520 sq. ft.," that "[t]he size of the principal structure is 2128 sq. ft. if measured at the foot print," and that the principal residential structure could be larger "if you consider the second floor and basement." (*Id.* at 7.) (*See also* RR at 20.) The Board concluded that the proposed "garage, which could hold up to 8

---

[3] The only other witness to testify was Mr. Young, who is not participating in the instant appeal. He testified that he thought that the size of the proposed garage was larger than the footprint of Landowner's dwelling. (RR at 102.) He stated that he has a detached garage with 7' by 8' foot doors that stores his primary car and one classic vehicle. (*Id.* at 104-105.)

cars, and was still a smaller structure than the principal structure and is therefore inferior or subordinate to it. It consumes a little over .2% of the entire lot." (*Id.*) Objector appealed the decision to the trial court which affirmed.

In this appeal,[4] Objector claims that the trial court erred in affirming the Board's decision that the proposed garage is an "accessory structure," "accessory use," and "private garage" under the Zoning Ordinance because it is not based on substantial evidence.[5] However, because the Honorable Donald R.

---

[4] Where, as here, the trial court has not taken additional evidence, our scope of review is limited to determining whether the Board abused its discretion or committed an error of law. *Sky's the Limit, Inc. v. Zoning Hearing Board of Smithfield Township*, 18 A.3d 409, 412 n.4 (Pa. Cmwlth.), *appeal denied*, 29 A.3d 374 (Pa. 2011). The Board abuses its discretion only if its findings are not supported by substantial evidence which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

[5] While not cited by Objector to the Board or to the trial court, his reliance on *Hess v. Warwick Township Zoning Hearing Board*, 977 A.2d 1216 (Pa. Cmwlth. 2009), *appeal denied*, 990 A.2d 731 (Pa. 2010), in this appeal does not compel a different result. In that case, we explained:

> "Customarily incidental" is best understood as invoking an objective reasonable person standard. Under this standard, we may look not only at how frequently the proposed accessory use is found in association with the primary use (if such evidence is available, it certainly is relevant) but also at the applicant's particular circumstances, the zoning ordinance and the indications therein as to the governing body's intent regarding the intensity of land use appropriate to the particular district, as well as the surrounding land conditions and any other relevant information, including general experience and common understanding, to reach a legal conclusion as to whether a reasonable person could consider the use in question to be customarily incidental. This approach respects the need for an understandable legal standard and the flexibility that is a necessary component of the analysis.

**(Footnote continued on next page…)**

5

Totaro of the Lancaster County Court of Common Pleas thoroughly addressed this issue in a well-reasoned January 27, 2014 opinion, we adopt that reasoning and affirm the trial court's order.

_____
DAN PELLEGRINI, President Judge

---

**(continued…)**

*Hess*, 977 A.2d at 1224 (footnote omitted). The record demonstrates that the Board and the trial court considered all of the foregoing factors and properly concluded as a matter of law that the proposed garage is an accessory use and structure that is customarily incidental to the primary residential use under the relevant provisions of the Township's zoning ordinance and the circumstances of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neal L. Hufford, Edward Young,     :
and Kozette Young     :
    :
        v.     : No. 1973 C.D. 2014
    :
East Cocalico Township Zoning     :
Hearing Board     :
    :
Appeal of:  Neal L. Hufford     :

# **O R D E R**

AND NOW, this 5th day of  August, 2015, the order of the Lancaster County Court of Common Pleas dated November 3, 2014, at No. CI-14-00165, is affirmed.

_____
DAN PELLEGRINI, President Judge

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

NEAL L. HUFFORD, EDWARD            :
YOUNG and KOZETTE YOUNG,           :
                    Appellants     :
            v.                     :            No.  CI-14-00165
                                   :            LAND USE APPEAL
EAST COCALICO TOWNSHIP          .  :
ZONING HEARING BOARD,              :
                    Appellee       :

## OPINION

BY TOTARO, J.

Presently before the Commonwealth Court of Pennsylvania is an appeal filed by Neal

Hufford ("Hufford" or "Appellant") from this Court's Order of November 3, 2014, affirming the

decision of the East Cocalico Township Zoning Hearing Board ("Board"), which affirmed the

issuance of Permit No. 13-009 ("Permit") to Anthony Jenkins ("Jenkins"). For the reasons that

follow, this appeal should be dismissed.

## BACKGROUND

: On January 15, 2013, Jenkins applied for a Permit in order to construct a 40'x40' pole

barn on his property, located at 182 Vera Cruz Road, East Cocalico Township, Lancaster County,

Pennsylvania, for use as a detached garage.[1] *See* Return of Record. On September 16, 2013,

East Cocalico Township ("Township"), through its Zoning and Code Enforcement Officer,

Anthony Luongo ("Officer"), issued a Permit granting the request by Jenkins to build the

proposed structure.[2] *Id.*

---

[1] Accompanying this application were detailed plans demonstrating the exact building
specifications and location. *See* Return of Record.

[2] The storm water plan submitted by Jenkins was approved that same day. Additionally, a letter
was sent to Jenkins detailing the conditions attached to the issued permit. *See* Return of Record.

On October 16, 2013, Hufford filed an appeal to the Board from the Officer's issuance of the Permit to Jenkins, alleging *inter alia,* that the garage is not an accessory use and is therefore not permitted by right. *See* Return of Record.

On December 11, 2013, a hearing was held before the Board regarding Hufford's appeal. *See* Return of Record.[3] According to testimony from the Officer who issued the Permit, the property in question is zoned agricultural and the primary use of the subject property is residential. (Notes of Testimony at 16, 22) (hereinafter "N.T."). Under terms of the East Cocalico Township Zoning Ordinance ("Ordinance"), a single-family residence and certain accessory structures are permitted by right in the agricultural zoning district. *Id.*

The Officer testified that Jenkins sought a permit to build a 40'x40' single-floor garage on his property, with an actual building size of 36'x40' according to the plans, containing two 10'x10' carriage style overhead doors. (N.T. at 17, 19-20, 37). The proposed use of the garage was for the private storage of classic cars owned by Jenkins. *Id.* at 21, 37-38. As such, there would be no electric, water or sewer service to the garage. *Id.* at 17-18. Furthermore, the structure would be within setback and impervious surface requirements. *Id.* at 23, 48-49.

In response to concerns raised over the size and intended use of the garage, the Officer noted there are no restrictions in the Ordinance as to the size of an accessory building. (N.T. at 50). There is no criteria for standard garage doors in the Ordinance. *Id.* at 58. Furthermore, the Officer was not aware of any restrictions in the ordinance nor any case law prohibiting the storing of classic cars in such an accessory garage. *Id.* Additionally, the Officer testified he was aware

---

[3] Hufford's appeal to the Board was consolidated with an appeal filed by Edward and Kozette Young ("Young"), whose property is contiguous to the subject property, because the appeal filed by Young raised substantially similar issues of both fact and law to that filed by Hufford.

2

of neighboring properties that have large accessory structures, including garages. *Id.* at 36, 58. When presented with photographs, the Officer identified a roughly 25'x25' to 30'x30' detached two-story structure on Hufford's property, classified as a library/office. *Id.* at 51-53. The Officer identified the Young property, which has a detached two-car garage in addition to a two-car garage attached to the house. *Id.* at 53. The Officer also identified a house with a very large detached garage, containing "multiple vehicles in that accessory structure on his property." *Id.* at 54. Four garage doors are located on that structure, three of which are over ten feet high. *Id.*

·· In the Officer's opinion, because a garage that stores personal vehicles is customarily incidental to a residence, the proposed structure was permitted by right as an accessory use. (N.T. at 26-27, 50, 55). Thus, such a private garage would not violate the Ordinance. *Id.* at 55.

At the conclusion of the hearing, the Board convened and unanimously decided to uphold the Officer's issuance of Permit No. 13-009. (N.T. at 67-68). On December 12, 2013, the Board issued a written decision through its counsel denying the appeals, and on January 8, 2014, the Board issued findings of fact and conclusions of law supporting their affirmance of the issuance of the Permit. Their decision found, *inter alia*, that there was substantial evidence in the record to establish the proposed garage is an accessory use customarily incidental and subordinate to the dwelling unit, and that the Officer did not commit an abuse of discretion or an error of law in granting the Permit. *See* Findings of Fact ¶ 26; Conclusions of Law ¶ 3.

On January 10, 2014, Hufford filed an appeal from the Board's decision to the Lancaster County Court of Common Pleas, alleging the Board committed an abuse of discretion and errors of law in upholding the Officer's issuance of the Permit. In his appeal, Hufford asked that this Court reverse the decision of the Board and enter an Order denying the Permit, or in the

3

alternative remand the case back to the Board for further testimony regarding use of the proposed building, or grant such other relief as the Court would deem appropriate.[4]

Pursuant to L.C.R.C.P. No. 27(D)(3), the matter was briefed and assigned to the Court for disposition. Thereafter, on November 3, 2014, this Court entered an Order dismissing Hufford's appeal and affirming the decision of the Board. On December 2, 2014, Hufford filed the instant appeal to the Commonwealth Court of Pennsylvania; and on December 22, 2014, Appellant filed a Statement of Errors Complained of on Appeal ("Statement"). The Board filed a Response to the Statement on December 31, 2014, and counsel for Jenkins filed a Response on January 5, 2015. This Opinion is written pursuant to Pa. R.A.P. 1925(a).[5]

## DISCUSSION

In his Statement, Appellant has essentially raised one issue: that this Court erred in finding the Board did not commit an abuse of discretion or an error of law in affirming the issuance of Permit No. 13-009.[6]

---

[4] In his Notice of Appeal to the Lancaster County Court of Common Pleas, Hufford argued the Appellants presented sufficient testimony to show that the Officer did not have adequate knowledge of the intended use and nature of the proposed building by Jenkins to conclude it was an accessory structure or would be used for an accessory use; the application and testimony did not support the conclusion that the proposed use of the building by Jenkins was an accessory use; the Board's findings of fact and conclusions of law regarding the nature and use of the proposed building were not supported by testimony at the hearing or in the application; and the Board denied Appellants a fair hearing by "actively coaching a Township witness evidencing a bias against Appellant and Youngs." See Notice of Appeal.

[5] Edward and Kozette Young took a separate appeal to the Lancaster County Court of Common Pleas from the Board's decision. Thereafter, on October 27, 2014, the Court entered an Order consolidating their appeal with the Hufford appeal. However, the Youngs did not appeal this Court's November 3, 2014 Order dismissing their appeal, and thus, they are not parties to the present appeal.

[6] In his Statement, Appellant specifically alleges the Court erred by (1) affirming the decision of the Board, which incorrectly concluded that the detached garage is an accessory structure and accessory use upon the residential property; (2) affirming the Zoning Decision that the Structure was an accessory structure and accessory use, and concluding the Zoning Ordinance placed no limitation on the size of

4

When a trial court does not take additional evidence, the trial court's standard of review for a land use appeal is limited to whether the zoning board committed an abuse of discretion or an error of law. *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009). An abuse of discretion occurs when a board's findings are not supported by substantial evidence contained in the record. *Id.* "Substantial evidence is that relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Borough of Fleetwood v. Zoning Hearing Bd. of Borough of Fleetwood*, 649 A.2d 651, 653 (Pa. 1994).

Whether a proposed use falls within the category described by a zoning ordinance is a question of law for the trial court, and must be factually based on the use described in the application and testimony presented at the hearing. *Southco, Inc. v. Concord Twp.*, 713 A.2d 607, 609 (Pa. 1998). Zoning ordinances should be liberally construed in order to allow land owners to realize the full benefit of their property. *Id.* A zoning hearing board's interpretation of its own ordinance is entitled to great weight and deference from a reviewing court. *Smith v. Zoning Hearing Bd. of Huntingdon Borough*, 734 A.2d 55, 57 (Pa. Cmwlth. 1999).

In the case *sub judice*, Jenkins applied for a Permit to construct a 40'x36' pole barn on his property for use as a detached garage, where he would store classic cars that were owned by him. While the property in question is zoned agricultural and the primary use of the subject property is residential, certain accessory uses and accessory structures associated with that use are permitted

such accessory structure and accessory use; (3) not following provisions of the Ordinance which place a subjective limit on the size and scope of an accessory structure; (4) finding the Board did not commit an error of law when the Board concluded the Structure was an accessory structure to the residence located on the residential property, where the residence has a smaller foot print than the Structure; and (5) concluding the Board's Decision was supported by substantial evidence, because testimony presented to the Board does not support a conclusion that the proposed use qualifies as a private garage accessory to the principal use of the property, which is a residence. *See* Statement.

5

within the agricultural zoning district, such as a garage. Ordinance §§ 220-11, 220-12(B). To that end, a "private garage" is defined in the Ordinance in pertinent part as follows:

> [a]n accessory building for the storage of one or more automobiles and/or other vehicles accessory and incidental to the primary use of the premises; provided, however, that one commercial vehicle not exceeding a gross vehicle weight of 11,000 pounds may be stored therein where the use of such vehicle is not incidental to the use of the premises. No business, occupation or service shall be conducted therein, nor shall space therein for more than one vehicle be leased to a nonoccupant of the premises. . . .

Ordinance § 220-11.

Thus, a private garage may be permitted as an accessory building to a single family home in the agricultural district, for the storage of more than one automobile, if it is accessory and incidental to the primary use of the premises. Nevertheless, Appellant argues this Court erred in finding there was substantial evidence to affirm the Board's decision that the detached garage was an accessory structure and accessory use on the residential property. *See* Statement ¶¶ 1, 5.

The Ordinance defines an accessory use as a use that is "customarily incidental and subordinate to the principal use or building and located on the same lot with this principal use or building." Ordinance § 220-11; *see also* § 220-12(B)(9). An accessory structure is a structure associated with an accessory use, such as a garage. Ordinance § 220-11. "In order to establish the right to an accessory use, a landowner must prove that the use sought is secondary to the principal use and that it is customarily incidental to the principal use." *Thomas v. Zoning Hearing Bd. of Benner Twp.*, 550 A.2d 1045, 1047 (Pa. Cmwlth. 1988).

In determining what uses are customarily incidental to a principal use, the "true nature" of the community must be taken into account. *Thomas*, 550 A.2d at 1046. A community's true nature is not limited to the area immediately surrounding the subject property, but rather the

6

community at-large. *Id.* Even so, there is no requirement that a majority, or even a substantial number of properties in the surrounding area be engaged in a similar accessory use. *Id.* at 1048; *Southco*, 713 A.2d at 611.

In the present case, the Officer testified that a property owner sought a Permit to build a private garage so he could store his personal classic cars. (N.T. at 49). There are no restrictions in the Ordinance that prohibit the storing of classic cars, restrict the size of the accessory building, or limit the number of cars. *Id.* at 50. After reviewing all evidence and the definition of "accessory use" in the Ordinance, the Officer concluded a private garage for the resident of that property to store personal cars was permitted within the agricultural zoning district, because it would be accessory to the primary use of the residence. *Id.* at 22-27, 39, 50.

Furthermore, when the true nature of the community at-large was considered, the Officer did not find the proposed garage to be atypical for an agriculturally-zoned community, where pole barns and other similar structures may be found. (N.T. at 50-55). For example, when presented with photographs of properties in the area surrounding the subject property, the Officer identified a large two-story detached accessory building on the Hufford property. *Id.* at 51-53. The Officer also identified two other properties with detached garages used to store cars, including a very large detached garage containing multiple vehicles and four garage doors, three of which are over ten feet high. *Id.* at 53-54.[7]

---

[7] The only other witness to testify at the hearing was Young, a neighbor of Jenkins, who initially stated he could not give an answer as to whether the proposed 40'x40' garage was customary for rural residential areas in East Cocalico Township. (N.T. at 61-62). Later in his testimony, Young stated such a size is not customary, noting his two car garage was customary as an accessory building. *Id.* at 62. However, Young did acknowledge that he has four garage spaces on his property, including two in the detached garage, and stored within that detached accessory garage is a classic vehicle. *Id.* at 60, 65.

After careful review of the record, this Court concluded that the Officer's testimony and all accompanying exhibits provided the Board with substantial evidence regarding the proposed size and use of the structure. Moreover, this substantial evidence supported the Board's conclusion that the proposed private garage was designed for an accessory use that was customarily incidental and subordinate to the primary residential structure. Because the Board's interpretation of its own ordinance is entitled to great weight and deference from the reviewing court, and this Court found there was substantial evidence to support the Board's determination, the Court found that the Board did not commit an abuse of discretion or an error of law.

Appellant further asserts that because the proposed structure has a larger "foot print" than the residence located on the property, the Court erred in finding the Board did not commit an error of law where the Board concluded the proposed garage would serve as an accessory structure to the Jenkins residence. *See* Statement ¶ 4.

According to testimony from the Officer at the hearing, the footprint of the principal residential structure was drawn to scale on the storm water plan submitted by Jenkins as part of his application. (N.T. at 16). While exact dimensions of the principal structure were not written on the plan, and no one testified to the exact size of the principal dwelling, the drawn-to-scale plot plan did show the footprints of the two-story single family dwelling and the accessory structures. *See* Return of Record; Findings of Fact ¶ 39; Discussion. From this documentation, the Board concluded that the existing principal structure on the subject property was larger than the proposed accessory structure. Findings of Fact ¶ 40; Discussion.[8]

---

[8] The only other witness to testify at the hearing, Young, opined without any proof or supporting documentation that the structure in question would have a larger footprint than the actual residence. (N.T. at 61-62).

8

With regard to a proposed structure, "the mere size of an accessory building does not alone determine whether the proposed use is incidental or subordinate to the principal use." *Tennyson v. Zoning Hearing Bd. of W. Bradford Twp.*, 952 A.2d 739, 745 (Pa. Cmwlth. 2008). In *Tennyson*, Commonwealth Court found that a 16,000 square foot indoor riding arena was subordinate and customarily incidental to a smaller 7,776 square foot stable, based upon testimony from an engineer and contractor which supported the assertion that an indoor riding arena is a typical accessory use to a stable. *Id.* at 742, 746.

The party opposing the application in *Tennyson* relied on the cases of *Risker v. Smith Twp. Zoning Hearing Bd.*, 886 A.2d 727 (Pa. Cmwlth. 2005),[9] and *Mitchell v. Zoning Hearing Bd. of the Borough of Mount Penn*, 838 A.2d 819 (Pa. Cmwlth. 2003),[10] for the proposition that an accessory structure larger in size than the principal building is not secondary to the principal building. *Tennyson*, 952 A.2d at 745-46. However, the Commonwealth Court expressly rejected this argument, stating that the size and scope of an accessory use are two of the many factors a zoning board must consider in determining whether a use is subordinate and incidental to a principle use. *Id.*

---

[9] In *Risker v. Smith Twp. Zoning Hearing Bd.*, the Commonwealth Court found that the trial court erred in reversing the decision of the zoning hearing board, which found that a 190,000 square foot runway with landing lights on the landowner's property, to be used for operation of the landowner's private aircraft, was neither subordinate nor incidental to the primary use of the property as a single-family residential home. 886 A.2d 727, 732 (Pa. Cmwlth. 2005).

[10] In *Mitchell v. Zoning Hearing Bd. of the Borough of Mount Penn*, the trial court upheld the zoning board's decision to allow renovation of a 700 seat gymnasium and 500-600 seat auditorium as an accessory use to the principal use of the property, a 141 student elementary school, provided the structure would only be used by students attending that elementary school and not all students within the district. 838 A.2d 819, 823-24 (Pa. Cmwlth. 2003). On appeal, the Commonwealth Court found that use of a gymnasium and auditorium equipped to support an entire school district could not be characterized as secondary or customarily incidental to a proposed elementary school with only 141 students. *Id.* at 827. However, because the trial court properly limited use of the facilities to only those students attending that elementary school, the trial court's decision was ultimately affirmed. *Id.*

9

In the present case, many factors were taken into consideration by the Board before determining that the proposed use was subordinate and incidental to the principle use, including size and scope of the proposed structure. *See* Findings of Fact; Discussion. The Board issued a decision after conducting a thorough review of all testimony, the Ordinance in question, and relevant case law, as evidenced by the Findings of Fact, Conclusion of Law, and Discussion.

After reviewing the Return of Record, this Court entered an Order on November 3, 2014 affirming the Decision of the Board, noting that while a garage of this size may not be typical, the relevant Ordinance does not prohibit such an accessory structure and accessory use.[11] Unlike *Risker, supra*, where the type of proposed accessory use was so far removed from the principal use as to render it no longer customary and incidental, the proposed use for the private garage in the present case is simply to store personal vehicles. As the Board correctly found, such a use is customarily incidental and subordinate to the principal residential use.[12]

The Court Order of November 3, 2014 also cited *Tennyson, supra*, to recognize that while the size and scope of an accessory use must be considered, they are not determinative factors.[13]

---

[11] Appellant claims that while the Court did acknowledge the size of the accessory structure is unusually large, the Court did not consider provisions from the Ordinance which "place a subjective limit on the size and scope of a structure," including the definitions of "accessory structure" and "private garage." *See* Statement ¶ 3. However, the Order of November 3, 2014 does not in any way suggest that the Court disregarded any provisions of the Ordinance.

[12] Similar to limitations placed on the approved use in *Mitchell, supra*, Jenkins is limited in his use of the private garage by specific language contained within the definition of "private garage" as found in Section 220-11 of the Ordinance.

[13] Appellant asserts the Court erred by concluding that the Ordinance "placed no limitation on the size of such accessory structure and accessory use." *See* Statement ¶ 2. However, as noted, the Court's Order of November 3, 2014 does not arrive at any such conclusion. On the contrary, the Court cited the Commonwealth Court case of *Tennyson* in the Order for the proposition that the size and scope of an accessory use must be considered. *See* Order of November 3, 2014.

10

Thus, given the fact that the approved accessory structure in *Tennyson* was over twice the size of the principal structure, and the proposed private garage in the present case is clearly not over twice the size of the primary residence, the size and scope of the proposed structure would not, standing alone, be sufficient to disapprove the accessory use.

For these reasons, Appellant's argument in this regard must fail.

## CONCLUSION

Under the law, zoning ordinances should be liberally construed so that land owners may realize the full benefit of their property. Moreover, a zoning hearing board's interpretation of its own ordinance is entitled to great weight and deference from a reviewing court, and should only be reversed upon a showing of abuse of discretion or an error of law.

In the present case, the Officer lawfully issued a Permit to Jenkins in order to allow him to build a proposed garage on his residential property, to store privately-owned cars. Thereafter, the Board affirmed the Officer's issuance of the Permit because the proposed garage is permitted by right as an accessory structure to a single-family residential home, its intended use is customarily incidental and subordinate to the residential use, and neither the proposed size nor the proposed use of this garage placed it outside that legal standard. Because the Board's findings were supported by substantial evidence contained in the record, the Board did not commit an error of law or an abuse of discretion. Consequently, the trial court properly affirmed the Board's Decision and this appeal should be dismissed.

BY THE COURT:

January 27, 2015
_____
DATE

_____
DONALD R. TOTARO, JUDGE

11

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 1-27-15